## TICOR TITLE INSURANCE CO. ET AL. *v.* BROWN ET AL.

No. 92–1988.   Argued March 1, 1994—Decided April 4, 1994

*Richard G. Taranto* argued the cause for petitioners. With him on the briefs were *Joel I. Klein, Frank D. Tatum, Jr., Paul J. Laveroni, John C. Christie, Jr., Patrick J. Roach, John F. Graybeal, Robert H. Tiller,* and *David M. Foster.*

*Gerald D. W. North* argued the cause for respondents. With him on the brief were *Ted M. Warshafsky, Aram A. Hartunian,* and *Ronald L. Futterman.*\*

PER CURIAM.

For the reasons discussed below, we have concluded that deciding this case would require us to resolve a constitutional question that may be entirely hypothetical, and we accordingly dismiss the writ as improvidently granted.

## I

In 1985, the Federal Trade Commission initiated enforcement proceedings against petitioners, six title insurance companies, alleging that they conspired to fix prices in 13 States including Arizona and Wisconsin. Shortly after that, private parties in the affected States filed 12 different "tag-along" antitrust class actions, seeking treble damages and injunctive relief. Those private suits were consolidated for pretrial purposes pursuant to 28 U. S. C. § 1407 (the federal multidistrict litigation statute), and were transferred to the

---

*Briefs of *amici curiae* urging reversal were filed for the American Insurance Association et al. by *Herbert M. Wachtell, Douglas S. Liebhafsky, Stuart Philip Ross, Sean M. Hanifin, Merril J. Hirsh, Craig A. Berrington, Paul J. Bschorr, Richard W. Reinthaler,* and *Rebecca L. Ford;* for the Lawyer's Committee for Civil Rights Under Law by *Michael A. Cooper, Herbert J. Hansell, Thomas J. Henderson, Richard T. Seymour, Sharon R. Vinick, Edward Labaton,* and *Bernard Persky;* and for the National Football League by *Frank Rothman, William L. Daly, Herbert Dym,* and *Gregg H. Levy.*

Briefs of *amici curiae* urging affirmance were filed for the Association of Trial Lawyers of America by *Jeffrey Robert White, James E. Rooks, Jr.,* and *Barry J. Nace;* for Owens-Illinois, Inc., by *James Dabney Miller* and *David L. Gray;* for Public Citizen by *Alan B. Morrison* and *Brian Wolfman;* for Trial Lawyers for Public Justice by *Roberta B. Walburn, Arthur H. Bryant,* and *Leslie A. Brueckner;* for James Menendez et al. by *Brent M. Rosenthal;* and for Leslie O'Neal et al. by *Don Howarth* and *Suzelle M. Smith.*

District Court for the Eastern District of Pennsylvania as MDL No. 633.

In January 1986, spurred on by an intervening decision of this Court that substantially weakened the claims against petitioners, see *Southern Motor Carriers Rate Conference, Inc. v. United States*, 471 U. S. 48 (1985), petitioners and the class representatives in MDL No. 633 reached a settlement. The settlement extinguished all money damages claims against petitioners by those "'purchasers and insureds, who purchased or received title insurance . . . from any title insurance underwriter . . . with respect to real estate located in any of the thirteen Affected States during the period from January 1, 1981 to December 31, 1985,'" a class that included the respondents. *In re Real Estate Title and Settlement Services Antitrust Litigation*, 1986–1 Trade Cases ¶ 67,149, pp. 62,921, 62,924 (ED Pa. 1986) (quoting settlement agreement). To the plaintiffs, the settlement agreement awarded injunctive relief, an increased amount of coverage on any title insurance policy that class members bought during the class period, an increased amount of coverage on specified title insurance policies that class members might purchase from petitioners during a future 1-year period, and payment of attorney's fees and costs of the lawsuit. The District Court provisionally certified the settlement class (as stipulated by the class representatives and petitioners) under Federal Rules of Civil Procedure 23(b)(1) and (b)(2), and provisionally accepted the settlement.

At the ensuing final settlement hearing, the State of Wisconsin objected to the proposed settlement both as a class member and as *parens patriae* for its resident class members, claiming that the action could not be certified under Rule 23(b)(2) because the relief sought in the complaints was primarily monetary. Wisconsin also claimed (and was joined in this by the State of Arizona, both as a class member and as *parens patriae*) that due process required that the proposed class members have an opportunity to opt out of the

class. The District Court ultimately rejected these objections, certified the classes under Rules 23(b)(1)(A) and (b)(2),* and accepted the settlement. The Third Circuit affirmed without opinion, *In re Real Estate Title and Settlement Services Antitrust Litigation*, 815 F. 2d 695 (1987) (judgment order), and we denied certiorari, 485 U. S. 909 (1988).

In 1990, respondent Brown filed the present action in District Court in Arizona on behalf of Arizona and Wisconsin title insurance consumers, alleging that petitioners had conspired to fix rates for title-search services in those States in violation of the federal antitrust laws. The District Court granted petitioners summary judgment on the ground, among others, that respondents, as parties to the MDL No. 633 suit, were bound by the judgment entered pursuant to the settlement. The Ninth Circuit reversed, accepting respondents' contention that it would violate due process to accord res judicata effect to a judgment in a class action that involved money damages claims (or perhaps that involved *primarily* money damages claims) against a plaintiff in the previous suit who had not been afforded a right to opt out on those claims. 982 F. 2d 386, 392 (1992). Before the Ninth Circuit, respondents did not (and indeed could not) challenge whether the class in the MDL No. 633 litigation was properly certified under Rules 23(b)(1)(A) and (b)(2). And in this Court, petitioners present only a single question—viz., "[w]hether a federal court may refuse to enforce a prior federal class action judgment, properly certified under Rule 23,

---

*Certification under Rule 23(b)(1)(A) requires that the prosecution of separate actions would create a risk of "inconsistent or varying adjudications with respect to individual members of the class· which would establish incompatible standards of conduct for the party opposing the class." Certification under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

on grounds that absent class members have a constitutional due process right to opt out of any class action which asserts monetary claims on their behalf." Pet. for Cert. i.

## II

That certified question is of no general consequence if, whether or not absent class members have a constitutional right to opt out of such actions, they have a right to do so under the Federal Rules of Civil Procedure. Such a right would exist if, in actions seeking monetary damages, classes can be certified only under Rule 23(b)(3), which permits opt-out, and not under Rules 23(b)(1) and (b)(2), which do not. See Rules 23(c)(2) and (c)(3). That is at least a substantial possibility—and we would normally resolve that preliminary nonconstitutional question before proceeding to the constitutional claim. See *New York City Transit Authority* v. *Beazer*, 440 U. S. 568, 582–583 (1979). The law of res judicata, however, prevents that question from being litigated here. It was conclusively determined in the MDL No. 633 litigation that respondents' class fit within Rules 23(b)(1)(A) and (b)(2); even though that determination may have been wrong, it is conclusive upon these parties, and the alternative of using the Federal Rules instead of the Constitution as the means of imposing an opt-out requirement for this settlement is no longer available.

The most obvious consequence of this unavailability is, as we have suggested, that our resolution of the posited constitutional question may be quite unnecessary in law, and of virtually no practical consequence in fact, except with respect to these particular litigants. Another consequence, less apparent, is that resolving the constitutional question on the assumption of proper certification under the Rules may lead us to the wrong result. If the Federal Rules, which generally are not affirmatively enacted into law by Congress, see 28 U. S. C. §§ 2072(a), (b), 2074(a), are not entitled to that great deference as to constitutionality which we accord fed-

eral statutes, see, *e. g., Rostker* v. *Goldberg,* 453 U. S. 57, 64 (1981); *Walters* v. *National Assn. of Radiation Survivors,* 473 U. S. 305, 319–320 (1985), they at least come with the *imprimatur* of the rulemaking authority of this Court. In deciding the present case, we must assume either that the lack of opt-out opportunity in these circumstances was decreed by the Rules or that it was not (though the parties are bound by an erroneous holding that it was). If we make the former assumption we may approve, in the mistaken deference to prior Supreme Court action and congressional acquiescence, action that neither we nor Congress would independently think constitutional. If we make the latter assumption, we may announce a constitutional rule that is good for no other federal class action. Neither option is attractive.

The one reason to proceed is to achieve justice in this particular case. Even if the constitutional question presented is hypothetical as to everyone else, it would seem to be of great practical importance to these litigants. But that is ordinarily not sufficient reason for our granting certiorari—even when unnecessary constitutional pronouncements are not in the picture. Moreover, as matters have developed it is not clear that our resolution of the constitutional question will make any difference even to these litigants. On the day we granted certiorari we were informed that the parties had reached a settlement designed to moot the petition, which now awaits the approval of the District Court.

In these circumstances, we think it best to dismiss the writ as improvidently granted.

JUSTICE O'CONNOR, with whom THE CHIEF JUSTICE and JUSTICE KENNEDY join, dissenting.

We granted certiorari to consider one specific question: "Whether a federal court may refuse to enforce a prior federal class action judgment, properly certified under Rule 23, on grounds that absent class members have a constitutional

due process right to opt out of any class action which asserts monetary claims on their behalf." Pet. for Cert. i. The Court decides not to answer this question based on its speculation about a nonconstitutional ground for decision that is neither presented on this record nor available to these parties. From that decision I respectfully dissent.

Respondents are members of a class that reached a final settlement with petitioners in an antitrust action styled MDL No. 633. *In re Real Estate Title and Settlement Services Antitrust Litigation,* 1986–1 Trade Cases ¶ 67,149, p. 62,921 (ED Pa. 1986), aff'd, 815 F. 2d 695 (CA3 1987), cert. denied, 485 U. S. 909 (1988). Respondents subsequently brought this action against petitioners, asserting some of the same claims. The District Court held that respondents had been adequately represented in the MDL No. 633 action, and granted summary judgment for petitioners because, given the identity of parties and claims, the MDL No. 633 settlement was res judicata. App. to Pet. for Cert. 20a–28a. The Court of Appeals for the Ninth Circuit reversed. 982 F. 2d 386 (1992). The court agreed that respondents had been adequately represented in the MDL No. 633 action, *id.,* at 390–391, but held that respondents could nevertheless relitigate the same claims against petitioners: "Because [respondents] had no opportunity to opt out of the MDL No. 633 litigation, we hold there would be a violation of minimal due process if [respondents'] damage claims were held barred by *res judicata." Id.,* at 392.

The Court concludes that the correctness of the Ninth Circuit's constitutional interpretation "is of no general consequence if, . . . in actions seeking monetary damages, classes can be certified only under Rule 23(b)(3), which permits opt-out, and not under Rules 23(b)(1) and (b)(2), which do not." *Ante,* at 121. In other words, the Court declines to answer the constitutional question because the MDL No. 633 action might not have been properly certified—an issue that was litigated to a final determination in petitioners' favor more

than five years ago, and on which we denied certiorari. The nonconstitutional ground for decision about which the Court speculates is therefore unavailable to respondents. The constitutional ground on which the Court of Appeals relied, the one we granted certiorari to review and the parties have briefed and argued, was necessary to the decision in this case. Our prudential rule of avoiding constitutional questions has no application in these circumstances, and the Court errs in relying on it.

The Court's assertion that "our resolution of the posited constitutional question may be . . . of virtually no practical consequence in fact," *ibid.*, is unsound. The lower courts have consistently held that the presence of monetary damages claims does not preclude class certification under Rules 23(b)(1)(A) and (b)(2). See 7A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, Civil 2d § 1775, pp. 463–470 (1986 and Supp. 1992). Whether or not those decisions are correct (a question we need not, and indeed should not, decide today), they at least indicate that there are a substantial number of class members in exactly the same position as respondents. Under the Ninth Circuit's rationale in this case, every one of them has the right to go into federal court and relitigate their claims against the defendants in the original action. The individuals, corporations, and governments that have successfully defended against class actions or reached appropriate settlements, but are now subject to relitigation of the same claims with individual class members, will rightly dispute the Court's characterization of the constitutional rule in this case as inconsequential.

The Court is likewise incorrect in suggesting that a decision in this case "may be quite unnecessary in law." *Ante,* at 121. Unless and until a contrary rule is adopted, courts will continue to certify classes under Rules 23(b)(1) and (b)(2) notwithstanding the presence of damages claims; the constitutional opt-out right announced by the court below will be

implicated in every such action, at least in the Ninth Circuit. Moreover, because the decision below is based on the Due Process Clause, presumably it applies to the States; although we held in *Phillips Petroleum Co.* v. *Shutts*, 472 U. S. 797 (1985), that there is a constitutional right to opt out of class actions brought in state court, that holding was expressly "limited to those class actions which seek to bind known plaintiffs concerning claims wholly or predominately for money judgments." *Id.*, at 811, n. 3. The Ninth Circuit's rule, by contrast, applies whenever "substantial damage claims" are asserted. See 982 F. 2d, at 392. The resolution of a constitutional issue with such broad-ranging consequences is both necessary and appropriate.

Finally, I do not agree with the Court's suggestion that the posture of the case could "lead us to the wrong result" with respect to the question whether the Due Process Clause requires an opt-out right in federal class actions involving claims for money damages. See *ante,* at 121–122. As the case comes to us, we must assume that the MDL No. 633 class was properly certified under Rule 23, notwithstanding the presence of claims for monetary relief. But this assumption, coupled with whatever presumption of constitutionality to which the Rules are entitled, will not lead us to "approve . . . action that neither we nor Congress would independently think constitutional." *Ante,* at 122. Either an opt-out right is constitutionally required, or it is not. We can decide this issue while reserving the question of how the Rules should be construed. While it might be convenient, and it would certainly accord with our usual practice, to decide the nonconstitutional question first, that option is not available to us in this case. The only question, then, is whether we should dismiss the writ as improvidently granted. In my view, the importance of the constitutional question, as well as the significant expenditures of resources by the litigants, *amici,* and this Court, outweighs the prudential concerns on which the Court relies.

When a constitutional issue is fairly joined, necessary to the decision, and important enough to warrant review, this Court should not avoid resolving it—particularly on the basis of an entirely speculative alternative ground for decision that is neither presented by the record nor available to the parties before the Court. The decision below rests exclusively on a constitutional right to opt out of class actions asserting claims for monetary relief. We granted certiorari to consider whether such a right exists. The issue has been thoroughly briefed and argued by the parties. We should decide it.