_____

No. 95-1925
_____

In Re:  Piper Funds, Inc.,          *
Institutional Government            *
Income Portfolio Litigation.        *
                                    *
--------------------------------
Richard J. Rodney, Jr., et al.,     *
                                    *
     Plaintiffs - Appellees,        *
                                    *
     v.                             *
                                    *
Piper Capital Management, Inc.;     *
Piper Funds, Inc. Institutional     *   Appeal from the United States
Government Income Portfolio;        *   District Court for the
Piper Jaffray, Inc.; Piper          *   District of Minnesota.

Jaffray Companies Inc.;             *
William H. Ellis; Edward J.         *
Kohler,                             *
                                    *
     Defendants - Appellees,        *
                                    *
Park Nicollet Medical               *
Foundation,                         *
                                    *
     Objector - Appellant.          *
                                    _____

               Submitted:  October 19, 1995

                  Filed:  December 4, 1995
                                    _____

Before RICHARD S. ARNOLD, Chief Judge, WHITE,[*] Associate Justice (Ret.),
     and LOKEN, Circuit Judge.
                                    _____

LOKEN, Circuit Judge.

     Park Nicollet Medical Foundation, an unwilling member of a settlement
class in this securities fraud class action, wishes to arbitrate its claim
against investment adviser Piper Capital

_____

[*]The HONORABLE BYRON R. WHITE, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

Management Incorporated.[1]  Park Nicollet appeals district court orders enjoining arbitration until the court permits Park Nicollet to opt out of the class, and denying its motion to stay the class action pending arbitration.  Concluding that these orders deny Park Nicollet its contractual right to arbitrate in violation of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), we reverse.

## I. Factual Background.

Park Nicollet is a non-profit medical foundation based in Minnesota. In 1991, Park Nicollet hired Piper to manage over $2,500,000 of Park Nicollet's endowment fund.  Park Nicollet signed Piper's standard Investment Management Agreement, in which the parties agreed that "all controversies . . . shall be determined by arbitration to the fullest extent provided by law," in accordance with the rules then in effect of the National Association of Securities Dealers ("NASD").

Piper invested a substantial portion of Park Nicollet's funds in Piper's Institutional Government Income Portfolio mutual fund (the "Fund"). In early 1994, shares in the Fund lost over twenty percent of their value, largely because the Fund was heavily invested in "derivative" fixed income securities that were particularly hard-hit by rising interest rates.  Ten class action lawsuits were promptly filed on behalf of some 7,000 investors who had purchased shares of the Fund between July 1, 1991, and May 9, 1994. The class plaintiffs alleged numerous claims under federal and state securities laws, plus common law claims of misrepresentation and breach of fiduciary duty.  The Judicial Panel on Multidistrict Litigation consolidated these cases and transferred them to the District of Minnesota.

---

[1]Piper Capital Management is one of several affiliated companies named as defendants in the class action.  The parent company is Piper Jaffray Companies Inc.  Like the parties, we will refer to the class action defendants as "Piper."

-2-

In January 1995, Park Nicollet filed a fifty-page Statement of Claim with the NASD, requesting an arbitration award of over $4,500,000. Because this claim overlapped claims asserted by the class action plaintiffs, Park Nicollet stated, in accordance with § 12(d)(2) of the NASD Code of Arbitration Procedure ("NASD Code"), that "it is electing not to participate in the as yet uncertified class actions." In early February, Piper and attorneys for the plaintiff class tentatively settled the class actions for approximately $70 million. On March 2, 1995, Park Nicollet advised the district court by letter that it has "1) chosen to have its dispute with Piper resolved in arbitration, 2) decided not to participate in the putative class actions, and 3) irrevocably opted out of the putative class actions."

The next day, at the request of the class action parties, the district court entered an order conditionally certifying a settlement class, and enjoining arbitration by any class member until after the court distributes a class notice and then rules on requests to opt out of the class (the "March 3 Order").[2] Park Nicollet moved to vacate the March 3 Order, and to stay the class actions pending arbitration pursuant to § 3 of the FAA. The district court denied that motion in an April 3, 1995, Memorandum and Order (the "April 3 Order"). Concluding that the FAA does not bar an injunction where the party seeking arbitration is a member of a conditionally certified class, the court denied Park Nicollet's motion to vacate on the ground that Piper and the class

---

[2]The district court based its injunction on the All Writs Act, 28 U.S.C. § 1651, which has been invoked by federal class action courts to enjoin persons not within the court's jurisdiction from frustrating a court order or court-supervised settlement. See, e.g., In re Baldwin-United Corp., 770 F.2d 328, 335-38 (2d Cir. 1985). We agree with the district court that it has the power, under Fed. R. Civ. P. 23 augmented by the All Writs Act, to control conduct by absent class members that affects management or disposition of the class action. However, exercise of this power must be "agreeable to the usages and principles of law," § 1651(a), which in this case include the FAA as well as Rule 23.

plaintiffs had "carefully negotiated a settlement in this case before any forum had addressed the merits, and [an arbitration] ruling on an issue such as whether or not Piper made fraudulent representations could jeopardize that proposed agreement."  Park Nicollet appeals these two orders.

## II. Two Threshold Issues.

Piper contends that we lack jurisdiction because Park Nicollet has appealed non-final orders, and that Park Nicollet lacks standing to challenge those orders.  We disagree.

### A. Appealability.

In Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 287-88 (1988), the Supreme Court held that an order refusing to stay litigation pending the outcome of another proceeding, such as an arbitration, is not automatically appealable as a collateral order or an injunction.  Congress responded by enacting Section 16 of the FAA,[3] which makes appealable "an interlocutory order granting . . . an injunction against an arbitration," § 16(a)(2), and also an order "refusing a stay of any action under section 3 of [the FAA]," § 16(a)(1)(A).

The district court's March 3 Order enjoined Park Nicollet from proceeding with its arbitration against Piper.  The court's April 3 Order denied Park Nicollet's motion to stay the class action pending arbitration.  Both orders are appealable under § 16(a)(2) and § 16(a)(1)(A).  We reject Piper's contention that the orders should be non-appealable because they did not decide arbitrability

---

[3]See Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, § 1019, 102 Stat. 4642, 4670 (1988).  The new section was later renumbered as § 16 in the Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 325(a), 104 Stat. 5089, 5120 (1990).

-4-

and were not "anti-arbitration."  The plain language of the statute is controlling.

## B. Standing.

Piper argues that Park Nicollet lacks standing to challenge the district court's orders because it did not seek leave to intervene in the class action.  Piper relies on Croyden Associates v. Alleco, Inc., 969 F.2d 675 (8th Cir. 1992), cert. denied, 113 S. Ct. 1251 (1993), where we held that an unnamed class member must intervene before appealing the approval of a class settlement in which it will participate.  This case is very different.  Park Nicollet is not attacking the adequacy of the proposed settlement.  Rather, it appeals injunctive orders interfering with its contractual right to reject the class action remedy and arbitrate.

Section 3 of the FAA provides for a stay of litigation pending arbitration "on application of one of the parties."  The term "party" includes a party to the arbitration agreement.  See Dickstein v. duPont, 443 F.2d 783, 785 (1st Cir. 1971).  Section 16 allows an appeal from an order refusing a § 3 stay.  To give proper effect to § 16, the party denied the § 3 stay, here Park Nicollet, must have standing to appeal.

A nonparty normally has standing to appeal when it is adversely affected by an injunction.  See Thompson v. Freeman, 648 F.2d 1144, 1147 n.5 (8th Cir. 1981); Hazeltine Research, Inc. v. Zenith Radio Corp., 388 F.2d 25, 28-30 (7th Cir. 1967), aff'd, 395 U.S. 100, 110 (1969).  Equitable considerations clearly warrant giving standing to appeal to a nonparty that has been "haled . . . into district court despite [its] objections." S.E.C. v. Wencke, 783 F.2d 829, 834 (9th Cir.), cert. denied, 479 U.S. 818 (1986).  For these reasons, we conclude Park Nicollet has standing to appeal.

**III. The Merits.**

**A. The Legal Setting.**

Arbitration has long been a preferred remedy in the securities industry.[4]  The FAA, enacted in 1925, made the industry's pre-dispute arbitration agreements enforceable in federal court.  However, in Wilko v. Swan, 346 U.S. 427 (1953), the Supreme Court held that investor-customers could not be compelled to arbitrate claims under the Securities Act of 1933.  Until 1987, most lower federal courts held that investors likewise could not be compelled to arbitrate claims of securities fraud under the Securities Exchange Act of 1934, despite Supreme Court warnings that this was an open issue.  See Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 224 (1985) (White, J., concurring).

In Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987), the Court held that pre-dispute agreements to arbitrate Exchange Act claims are enforceable under the FAA, and in Rodriquez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989), the Court overruled Wilko and held that agreements to arbitrate 1933 Act claims are enforceable as well.  These recent decisions mean that the Park Nicollet/Piper agreement to arbitrate all claims, including securities law claims encompassed by this class action, is enforceable under the FAA.  That is an important cornerstone for the issues raised in this appeal.

The class action remedy is frequently invoked by those with claims under the federal securities laws, and it is a useful procedure for remedying similar claims of numerous small investors.

---

[4]For example, the New York Stock Exchange ("NYSE") constitution has called for arbitration of disputes between members and their customers since 1872.  See Constantine N. Katsoris, Foreword: New York Stock Exchange, Inc. Symposium on Arbitration in the Securities Industry, 63 Fordham L. Rev. 1501 (1995).

McMahon created two significant uncertainties for class actions involving members of the securities industry and their investor-customers. The first question was whether an entire securities law class action could be submitted to arbitration, an issue the Supreme Court did not reach in Southland Corp. v. Keating, 465 U.S. 1 (1984). See Gammaro v. Thorp Consumer Discount Co., 828 F. Supp. 673 (D. Minn. 1993), appeal dismissed, 15 F.3d 93 (8th Cir. 1994). The second was whether securities industry defendants or their customer claimants could compel arbitration of pending class action claims, a tactic that class action plaintiffs have usually, but as this case illustrates, not always, opposed.

The 1975 amendments to the Exchange Act gave the Securities and Exchange Commission "expansive power to ensure the adequacy of the arbitration procedures employed by" self-regulatory organizations like the NASD, "including the power to mandate the adoption of any rules it deems necessary to ensure that arbitration procedures adequately protect statutory rights." McMahon, 482 U.S. at 233-34. In 1988, SEC Chairman David Ruder urged these organizations to modify and clarify their arbitration procedures relating to class actions. See S.E.C. Release No. 34-30882 (July 1, 1992), 57 Fed. Reg. 30519, 30520 (July 9, 1992). After four years of work, the NASD promulgated § 12(d) of the NASD Code, which addressed the above two issues:

> (d) Class Action Claims
>
> (1) A claim submitted as a class action shall not be eligible for arbitration under this Code at the Association.
>
> (2) Any claim filed by a member or members of a putative or certified class action is also ineligible for arbitration at the Association . . . . However, such claims shall be eligible for arbitration . . . pursuant to the parties' contractual agreement, if any, if a claimant demonstrates that it has elected not to participate in the putative or certified class action or,

> if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.

(Emphasis added.)[5] The SEC approved § 12(d) pursuant to its approval authority under § 19(b)(1) of the Exchange Act, 15 U.S.C. § 78s(b)(1). See S.E.C. Release No. 34-31371 (Oct 28, 1992), 57 Fed. Reg. 52659 (Nov. 4, 1992).

Park Nicollet's contract with Piper incorporated § 12(d) of the NASD Code by reference.[6] Park Nicollet included with its arbitration claim a declaration "that it has elected not to participate" in the class action, as § 12(d)(2) requires. Thus, the principal issue on this appeal is whether the district court violated the FAA as construed in McMahon when it enjoined Park Nicollet from proceeding with an arbitration to which it is contractually entitled under § 12(d) of the NASD Code.

## B. The Order Enjoining Arbitration.

Many cases have enforced agreements to arbitrate by staying contemporaneous litigation, a type of stay expressly authorized by § 3 of the FAA, 9 U.S.C. § 3. See, e.g., Morgan v. Smith Barney, Harris Upham & Co., 729 F.2d 1163 (8th Cir. 1984). On the other hand, the FAA does not authorize a district court to enjoin arbitration; instead, § 16(a)(2) makes immediately appealable "an interlocutory order granting . . . an injunction against an arbitration that is subject to this title." Consistent with the

---

[5]The other industry self-regulatory organizations adopted identical amendments to their rules governing member-customer and other arbitrations. See, e.g., NYSE Rule 600(d).

[6]Section 12(d) applies because Piper agreed to be bound by the arbitration rules in effect at the time Park Nicollet commenced arbitration. See Nielsen v. Piper, Jaffray & Hopwood, Inc., 66 F.3d 145, 148-49 (7th Cir. 1995).

national policy favoring arbitration, there are very few reported cases in which a federal court has enjoined arbitration.

Piper and the class plaintiffs rely on In re Y & A Group Sec. Litig., 38 F.3d 380, 383 (8th Cir. 1994), in which we affirmed an injunction barring arbitration of a dispute settled in a prior class action. The injunction in Y & A protected the res judicata effect of that prior judgment. Because the claimant sought an arbitration award precluded by the judgment, the injunction was like an order refusing to compel arbitration because a dispute is not arbitrable. Here, on the other hand, the district court agreed that Park Nicollet has a right to arbitrate but enjoined it from pursuing that remedy. Neither the district court nor appellees cite any case granting an injunction of this type.

The district court gave one reason for issuing its injunction -- because an arbitrator's "ruling on an issue such as whether or not Piper made fraudulent representations could jeopardize" the "carefully negotiated" class action settlement. For a number of reasons, we conclude that this is an insufficient basis upon which to limit Park Nicollet's rights under the FAA.

First, McMahon confirmed that Park Nicollet has a contractual right to immediate submission of its securities law claims to arbitration. Park Nicollet submitted its claim under class action provisions of the NASD Code that have been approved by the SEC under the federal securities laws. The district court's injunction significantly frustrated Park Nicollet's contractual rights, as protected by the FAA. "Belated enforcement of the arbitration clause, though a less substantial interference than a refusal to enforce it at all, nonetheless significantly disappoints the expectations of the parties and frustrates the clear purpose of their agreement." Dean Witter, 470 U.S. at 225 (1985) (White, J., concurring). See also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967) ("arbitration procedure, when

selected by the parties to a contract, [must] be speedy and not subject to delay and obstruction in the courts").

Second, prior cases make clear that Park Nicollet's contractual and statutory right to arbitrate may not be sacrificed on the altar of efficient class action management.  As the Supreme Court said in <u>Dean Witter</u>, 470 U.S. at 220, "[the FAA] was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered, and we must not . . . allow the fortuitous impact of the Act on efficient dispute resolution to overshadow the underlying motivation."  <u>See also</u> <u>C. Itoh & Co. v. Jordan Int'l Co.</u>, 552 F.2d 1228, 1231 (7th Cir. 1977).

Third, we do not accept the class action parties' conclusory assertion that immediate arbitration by Park Nicollet (and perhaps others) will frustrate their class action settlement.  For example, in <u>In re First Commodity Corp. Customer Accounts Litig.</u>, 119 F.R.D. 301, 305-06 (D. Mass. 1987), cited by the district court as the only reported decision acknowledging the power to stay arbitration by objecting class members pending approval of a settlement, the court declined to stay arbitration, and the defendants promptly waived that condition of the settlement. Moreover, even when the settling parties contemplate that class members with a substantial dollar volume of claims may opt out in favor of arbitration, their settlement agreement can conditionally take that into account;  indeed, it may even assist the settlement process to have arbitration opt outs identified before the final hearing on settlement approval.  Finally, the class action court should not be concerned if the settlement fund is ultimately reduced because many claimants elect to arbitrate; plaintiffs' class attorneys should not share in amounts paid to settle the claims of class members who choose arbitration.

For the foregoing reasons, we conclude that the district court violated the FAA and abused its discretion when it enjoined Park Nicollet from arbitrating its claim.

## C. The Order Refusing Park Nicollet's Request To Opt Out.

Park Nicollet also asked the district court to exclude Park Nicollet from the class or, alternatively, to stay the class action litigation. Reflecting due process principles, Fed. R. Civ. P. 23(c)(2) requires that a putative member of a Rule 23(b)(3) class action be given the opportunity to opt out and not be bound by the judgment. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173-76 (1974).[7] Therefore, a district court's class notice must advise each class member that "the court will exclude the member from the class if the member so requests by a specified date." Rule 23(c)(2)(A). In this case, the class notice is part of the lengthy settlement approval process, and the district court refused Park Nicollet's request for early opt out. Thus, the unique question presented is whether an unwilling class member's right to arbitrate may be held hostage in this manner to the class action settlement process.

We have no quarrel with the usual practice of not allowing class members to opt out until after the formal Rule 23(c)(2) notice to the class. That practice is administratively efficient, and it helps the court ensure that class members make informed

---

[7]The due process aspect of opting out was more explicitly discussed in Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985), which we appear to have read more narrowly in White v. National Football League, 41 F.3d 402, 407 (8th Cir. 1994), cert. denied, 115 S. Ct. 2569 (1995), than three Justices read it in Ticor Title Ins. Co. v. Brown, 114 S. Ct. 1359, 1363 (1994) (O'Connor, J., dissenting). The Supreme Court has been asked again to clarify this issue in Martin v. Drummond Co., Nos. 1930066-70, 1995 WL 396879 (Ala. July 7, 1995), petition for cert. filed, 64 U.S.L.W. 3287 (Oct. 17, 1995) (No. 95-548). In any event, Rule 23(c)(2) clearly provides Park Nicollet a right to opt out in this case.

decisions whether to opt out. However, the usual practice is not appropriate in this case. Although the court supervising a class action has wide discretion to control a class action, including the opt-out process, that discretion must be exercised consistent with the policies and principles of the FAA when a class member with an immediate right to arbitrate its claim seeks to opt out.

In this case, by its March 2, 1995, letter to the district court, Park Nicollet made an unrefuted showing that it (i) was represented by separate counsel; (ii) had a contractual right to arbitrate any claim encompassed by the class action; (iii) had submitted a claim to the NASD along with a declaration under § 12(d)(2) of the NASD Code that it elected not to participate in the class action; and (iv) now elected irrevocably to opt out of the class action. In our view, proper regard for the FAA required that the court promptly take one of three actions: it could stay the class action while Park Nicollet's claim is arbitrated; it could deny the request to opt out (for example, because Park Nicollet's arbitration claim is not arbitrable or its request to opt out was too late); or it could grant the request to opt out, in which case Park Nicollet's motion to stay the class action becomes moot. The district court did not stay the class action, and it is conceded that Park Nicollet is entitled to opt out. In these circumstances, the court abused its discretion in refusing to enter an order excluding Park Nicollet from the class.

## IV. Conclusion.

For the foregoing reasons, we issue the following order: (1) The district court's March 3 Order and April 3 Order are reversed insofar as (and only insofar as) they affect Park Nicollet Medical Foundation. (2) Piper Capital Management Incorporated and Piper Jaffray Inc. are ordered to arbitrate Park Nicollet's Statement of Claim to the NASD, without further delay, in accordance with the

Investment Management Agreement and applicable NASD rules.  (3) Park Nicollet's request for exclusion from the class is granted.  (4) Park Nicollet's motion to stay the class action litigation is denied as moot. (5) Our mandate shall issue forthwith.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-13-