151 F.3d 1234
 41 Fed.R.Serv.3d 1079, 98 Cal. Daily Op. Serv. 6521,
98 Daily Journal D.A.R. 9061
 Warren LINNEY, an individual, and all persons similarly
situated, Plaintiff,
and
Ed Bryant; Bill Chin; Lloyd Dawson; Arnold Leong; Lee
McDonald; Garry Samuels; Bruce Stone, aka
Roam-Tel Partners, Ltd.; Ronald
Trinchitella, Claimants-Appellants,
v.
CELLULAR ALASKA PARTNERSHIP, Defendant-Appellee.
Bobby CHAUDHURI; Eagle Enterprises I; Mercury Enterprises
II, Plaintiffs-Appellees,
Ed Bryant; Bill Chin; Lloyd Dawson; Arnold Leong; Lee
Mcdonald; Garry Samuels; Bruce Stone, aka
Roam-Tel Partners, Ltd.; Ronald
Trinchitella, Claimants-Appellants,
v.
CELLULAR ALASKA PARTNERSHIP, Defendant-Appellee.
Glen CONNELLY, an individual, and all persons similarly
situated, Plaintiff,
and
Ed Bryant; Bill Chin; Lloyd Dawson; Arnold Leong; Lee
Mcdonald; Garry Samuels; Bruce Stone, aka
Roam-Tel Partners, Ltd.; Ronald
Trinchitella, Claimants-Appellants,
v.
CELLULAR ALASKA PARTNERSHIP, Defendant-Appellee.
Kathleen SLOAN, Plaintiff-Appellee,
Ed Bryant; Bill Chin; Lloyd Dawson; Arnold Leong; Lee
Mcdonald; Garry Samuels; Bruce Stone, aka
Roam-Tel Partners, Ltd.; Ronald
Trinchitella, Claimants-Appellants,
v.
CELLULAR ALASKA PARTNERSHIP, Defendant-Appellee.
 Nos. 97-16637, 97-16638, 97-16639 and 97-16640.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 9, 1998.
Decided Aug. 21, 1998.
 
 Paul F. Kirsch, Townsend and Townsend and Crew, San Francisco, California, for claimants-appellants.
 Jacqueline Mottek and Elizabeth Joan Cabraser, Lieff, Cabraser, Heimann & Bernstein, San Francisco, California, for plaintiffs-appellees.
 Dale E. Barnes, Jr., McCutchen, Doyle, Brown & Enersen, San Francisco, California, for defendant-appellee.
 Appeals from the United States District Court for the Northern District of California; D. Lowell Jensen, District Judge, Presiding. D.C. No. CV-96-03008-DLJ, 97-00203-DLJ, 97-00425-DLJ and 97-00457-DLJ.
 Before: HALL and THOMAS, Circuit Judges, and WHALEY,* District Judge.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Eight minority partners who operate various cellular telephone markets appeal the district court's judgment certifying and approving the settlement of class actions against AT & T Wireless Services, Inc., and its affiliates and subsidiaries ("AT & T"), which became the general partner or majority shareholder in these partnerships. This court has jurisdiction over the district court's final order certifying and settling the actions pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 2
 * In the 1980s, the Federal Communications Commission (FCC) held lotteries to allocate cellular telephone licenses in the nation's smaller metropolitan areas. The FCC devised a plan to maximize the opportunities of small businesses to win a part of the growing cellular telephone market. Under this plan, contenders for a license were allowed to band together prior to the lottery in each market. Following the drawing, the winner of the lottery was given a bare majority interest in the market and the other members of the winner's band were given the balance of the interest. AT & T has purchased the rights of a number of majority interest holders throughout the country and has become a major player in the cellular telephone industry.
 
 
 3
 The complaints in these class actions were brought by holders of minority interests in markets in which AT & T holds a majority interest. The complaints allege that AT & T breached both its contract with class members and its fiduciary duty as a majority interest holder in the following ways: imposing costs, expenses, and fees in excess of reasonable overhead and profit and on less favorable terms than the market would bear; marking up the price of goods purchased on behalf of the markets; and financing the markets through onerous capital calls rather than through debt financing.
 
 
 4
 The lead complaint in this case, Warren Linney v. Cellular Alaska Partnership, was filed together with a Stipulation of Settlement after years of private negotiations. With regard to this settlement, the class was represented by Joseph W. Carcione and Tony J. Tanke, with Carcione also being a member of the class. The settlement provided that AT & T would cease charging a management fee; cease making capital calls on minority owners and instead provide funding at the prime lending rate; transfer equipment to the markets at its cost; not charge construction management fees for construction of facilities in the markets; lower the cost it charges markets to use AT & T switches; and enter into written agreements with minority owners with regard to fees, switch sharing, and costs.
 
 
 5
 The district court found that, while "the settlement itself may be fair and reasonable," the special master's award of $10 million in attorneys' fees was unreasonable. The district court held that the settlement value estimate provided by the parties was not developed during arm's-length negotiations, that the total award was unreasonable in light of the small liability AT & T would have faced, and that the method used to determine the fees was inappropriate. Most importantly, the district court found that the representation by class counsel Carcione and Tanke was inadequate in light of the fact that Carcione and Tanke entered into an employment agreement with defendant AT & T that raised a strong inference of conflict of interest. This agreement provided that, if the proposed settlement was approved, AT & T would hire Carcione and Tanke to monitor the settlement for six years.
 
 
 6
 After the district court rejected the first settlement, the plaintiffs hired as new class counsel the law firms of Lieff, Cabraser, Heimann & Bernstein and Girard & Green ("new class counsel").[1] These firms conducted their own discovery and concluded that the class's past damages consisted principally of $14.8 million in charges paid by minority owners during the period 1991 to 1995 that inured to the benefit of AT & T, only a portion of which could constitute legal damages. These firms then reached a new settlement with AT & T. The new settlement resulted in AT & T agreeing to implement accounting and management changes that mirrored the changes in the first settlement except that they would remain in effect until January 1, 2004 (two years longer than the period of time contemplated in the first settlement). The new settlement also provided a $6 million "Settlement Fund" for the plaintiff class, and did not release the claims of minority owners who had sold their interests. The new settlement provided for attorneys' fees to be paid out of the settlement fund in an amount to be determined by the Court.
 
 
 7
 This new settlement had the support of the proposed class representatives Bobby Chaudhuri (who had objected to the first settlement) and Glenn Connelly. On May 21, 1997, the district court granted preliminary approval to the new settlement. In response, appellant Lee McDonald sent a mailing to class members outlining his objections to the new settlement and soliciting responses. A number of other class members-including all appellants except one-also objected to the new settlement.
 
 
 8
 The district court, after a formal fairness hearing in which the objections were heard, issued an order certifying the new class and settlement. Appellants timely filed a notice of appeal.
 
 II
 
 9
 At the outset, we note that we will reverse the district court's decision certifying a class only upon a showing that the district court abused its discretion. See Hanlon v. Chrysler Corp., No. 96-16076, slip op. at 7906 (9th Cir. June 9, 1998) (as amended July 24, 1998). However, as the Supreme Court in Amchem Products, Inc. v. Windsor, 521 U.S. 591, ----, 117 S.Ct. 2231, 2248, 138 L.Ed.2d 689 (1997), has made clear, certain "specifications of [Fed.R.Civ.P. 23]-those designed to protect absentees by blocking unwarranted or overbroad class definitions-demand undiluted, even heightened, attention in the settlement context."
 
 
 10
 With regard to the district court's decision certifying the settlement, this court conducts a "very limited" review and "will reverse 'only upon a strong showing that the district court's decision was a clear abuse of discretion.' " See Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir.1992) (citing Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 626 (9th Cir.1982)). "This is especially true in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Id.
 
 
 11
 The district court's factual findings can be set aside only if clearly erroneous. See Fed.R.Civ.P. 52(a).
 
 III
 
 12
 The crux of this case involves issues surrounding adequate representation under Fed.R.Civ.P. 23(a)(4). Rule 23(a)(4) states that a class action may be certified by the district court only if "the representative parties will fairly and adequately protect the interests of the class."[2] This requirement ensures that the class is adequately represented both by counsel and by the named representative plaintiffs. See Brown v. Ticor Title Ins. Co., 982 F.2d 386, 390 (9th Cir.1992) ("Adequate representation as required by Federal Rules of Civil Procedure Rule 23(a)(4) 'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.' ") (citation omitted), cert. dismissed, 511 U.S. 117, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994); In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2nd Cir.1992) (holding that adequacy of representation under Rule 23(a)(4) is measured with regard to both class counsel and class representatives).
 
 
 13
 Appellants argue that the district court should have disqualified Carcione and Tanke and refused to certify the second settlement class because Carcione and Tanke's employment and fee-setting agreements with AT & T during the first settlement, and their contemporaneous settlement of their own cases along with the class action, created a disabling and lasting conflict of interest.
 
 
 14
 However, there is no per se rule that the continued participation by previous class counsel, whose conflict of interest led the district court previously to deny class certification, constitutes inadequate representation under Rule 23(a). As was the case here, the addition of new and impartial counsel can cure a conflict of interest even where previous counsel continues to be involved in the case. In fact, the continued involvement of previous counsel can be highly beneficial to the class. See Robin v. Doctors Officenters Corp., 686 F.Supp. 199, 205-06 (N.D.Ill.1988):
 
 
 15
 The addition of another class representative, together with his or her own counsel, circumvents any potential conflict. The addition of an impartial attorney ensures that vigorous prosecution of the class claims will continue.... Further, this course of action protects the class, which certainly would be prejudiced if compelled to retain new counsel, unfamiliar with the pending litigation....
 
 
 16
 In this case, Carcione and Tanke possessed a wealth of experience related to the class actions, garnered after years of settlement negotiations with AT & T. A per se rule that would deprive new class counsel of the benefit of such experience clearly would not be in the best interests of the class.
 
 
 17
 Of course, the district court must, as it did in this case, inquire into whether impermissible conflict continues to taint the settlement proceedings. Here, after a fairness hearing to which all objectors were invited, the district court found that the settlement was reached during arm's-length negotiations. The district court committed no abuse of discretion in finding that the class was adequately represented.
 
 IV
 
 18
 Appellants also argue that new class counsel were inadequate independent of Carcione and Tanke's alleged conflict of interest. Appellants make several vague and conclusory arguments, none of which warrant reversing the district court. Appellants argue that new class counsel failed to engage in formal discovery and relied wholly on the work product of former counsel. However, appellants do not demonstrate that the work product on which new class counsel relied was inadequate. In the context of class action settlements, "formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement. See In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir.1982) (citation and internal quotations omitted). In particular, the district court and plaintiffs may rely on discovery developed in prior or related proceedings. See In re Corrugated Container Antitrust Litigation, 643 F.2d 195, 211 (5th Cir.1981) (noting that "notwithstanding the status of discovery, plaintiffs' negotiators had access to a plethora of information regarding the facts of their case"); Bowling v. Pfizer, Inc., 143 F.R.D. 141, 162 (S.D.Ohio 1992) (holding that "a fair and reasonable settlement may be negotiated where the plaintiffs had access to discovery in other cases and the results of government investigations prior to agreeing to the class settlement").
 
 
 19
 Appellants also argue that new class counsel overestimated the perceived deficiencies in the class' claims in order to reach a quick settlement. However, the record reflects that new class counsel were being realistic about the class' chances of prevailing in litigation. First, new class counsel were not inadequate in recognizing the value of the settlement given considerable statute of limitations problems. AT & T regularly notified minority owners of the management fees and many members of the class complained at the time but chose not to sue. The fraudulent concealment doctrine would not have tolled the statute of limitations if the partners actually knew of the alleged wrongs, see Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1415-16 (9th Cir.1987) ("Appellants must demonstrate that they had neither actual nor constructive notice of the facts constituting their claims for relief."), or if the partners were not reasonably diligent in informing themselves of the alleged wrongs. See Klehr v. A.O. Smith Corp., 521 U.S. 179, ----, 117 S.Ct. 1984, 1993, 138 L.Ed.2d 373 (1997).
 
 
 20
 Second, appellants argue that new class counsel erred by not insisting that the class be allowed to opt-out of the monetary portion of the settlement, citing cases to suggest that the option to opt-out is required where monetary relief is sought in addition to injunctive relief. However, this court has held that due process requires the option to opt-out only in the limited set of claims that are "wholly or predominately for money judgments." Brown, 982 F.2d at 392 (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811 n. 3, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)). In this case, the value of the injunctive relief ($20.9 million to $34.2 million) far outweighs the value of the settlement fund ($6 million before costs and attorneys' fees, and approximately $3.7 to $4 million after). Thus, new class counsel were not inadequate for failing to insist on the option to opt-out given that such an option was not required and given the risk that AT & T would not settle for it.[3]
 
 
 21
 Third, appellants argue that new class counsel were wrong in their estimate of the class' damages. Appellants argue that counsel should have sought the diminution in value of the class' minority interests caused by defendants' conduct. However, individuals may not bring RICO claims for the diminution in value of their corporate interests. See Rylewicz v. Beaton Servs., Ltd., 888 F.2d 1175, 1179 (7th Cir.1989) ("The standing rule that stockholders may not bring individual claims under RICO for diminution in the value of the corporation prevails in all the Circuits that have considered the matter."); Cates v. International Tel. & Tel. Corp., 756 F.2d 1161, 1181 (5th Cir.1985) (holding that "any claims for damages which [plaintiff] suffered by reason of diminution in value of his partnership interest ... are in effect subsumed within the causes of action of the partnerships and do not afford [him] a separate, individual cause of action") (footnote omitted). While appellants assert in a footnote in their reply brief that this "could easily have been cured" by amendment, they provide no analysis in support of this proposition, thus making it impossible to assess. Cf. Cates, 756 F.2d at 1182 (noting the impossibility of adequately addressing individual versus partnership claims when the complaint is not precise enough).
 
 
 22
 Fourth, appellants make another conclusory argument that "[n]ew class counsel were also wrong when they argued the class could not possibly pursue damages for AT & T's failure to offer certain minority shareholders the same purchase price AT & T paid McCaw [with whom it merged] in 1994." This claim, however, is based on a "buy-out" clause that appears in only six of the partnership agreements, and thus has nothing to do with the overwhelming majority of the class. Even as to those six agreements, it is unclear whether this claim would have prevailed given the case law suggesting that such clauses are triggered only by an assignment, conveyance, or transfer of the majority interest (which the AT & T/McCaw merger did not involve). See, e.g., Star Cellular Tele. Co. v. Baton Rouge CGSA, Civ. Action No. 12507, 1993 WL 294847 (Del.Ch. Aug 2, 1993) (noting that the legal status of a merger under an antiassignment clause is "less than clear," but holding that an agreement that did not expressly include mergers within the category of prohibited transfers would not prohibit a merger where the merger did not create unreasonable risks for the plaintiffs and personal performance by the defendant was not a material premise of the agreement), aff'd 647 A.2d 382 (Del.1994); International Paper Co. v. Broadhead, 662 So.2d 277, 279 (Ala.Civ.App.1995) (holding that a merger does not constitute a transfer or an assignment).
 
 
 23
 Finally, appellants once again state in a single-sentence conclusion that new class counsel were inadequate by not amending the complaint to allege "obviously appropriate" claims for exclusive dealing under Section 4 of the Clayton Act (15 U.S.C. § 15) or unfair competition under California Business and Professions Code § 17200. However, appellants do not state why such claims are "obviously appropriate" or even what such claims are.[4] Such vague arguments provide little basis for holding that the district court abused its discretion in finding that counsel's representation was adequate.
 
 V
 
 24
 Appellants also argue that the district court abused its discretion in finding that the class representatives adequately represented the class and that the settlement was supported by the majority of class members. The district court took into account the views of class representatives Chaudhuri and Connelly, who actively supported the second settlement, and the views of class representative Trinchitella, who was the only class representative to oppose the settlement. In addition, the district court took into account the voluminous objections of class member Lee McDonald, who put forth evidence of an admittedly unscientific "survey" that purported to show dissatisfaction expressed by 110 of the over 600 class members.
 
 
 25
 The district court did not abuse its discretion in finding that the class representatives were adequate under Rule 23(a)(4). Appellants make no arguments that class representatives were unqualified, were antagonistic to the class, did not share an interest with the class, or were in collusion with AT & T. See Brown, 982 F.2d at 390. Furthermore, merely pointing out that there were some class members who objected to the settlement is not enough to show that the representatives were inadequate. See DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1175 (8th Cir.1995) (holding that a class representative was not inadequate merely because some class members objected to the settlement terms, because to hold otherwise would require decertification any time an objection was raised to a class).VI
 
 
 26
 Appellants also argue that the district court abused its discretion in finding the settlement fundamentally fair, adequate, and reasonable. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir.1993). This determination requires:
 
 
 27
 a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.
 
 
 28
 Id.
 
 
 29
 In Torrisi, this court found one factor-the financial condition of the defendant-predominated to make clear that the district court acted within its discretion. Id. at 1376. In the present case, there are many factors that make clear that the district court acted within its discretion. As in Torrisi, appellants "offer[ ] nothing but conclusory argument to the contrary." Id.
 
 
 30
 As described in Part V supra, the risks of going to trial would have been significant. In light of these risks, the second settlement's value-estimated by certified public accountants to have a present value of between $20.9 million and $34.2 million plus the $6 million Settlement Fund-was certainly fair, adequate, and reasonable. This is especially true given the fact that the district court conducted a fairness hearing to which all of the objectors were invited and thoroughly considered all objections.[5]
 
 
 31
 Appellants offer nothing more than speculation about what damages "might have been" won had they prevailed at trial. This court has aptly held that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." Officers for Justice v. Civil Serv. Comm'n, 688 F.2d at 625 (emphasis in original). Thus, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.' " Id. at 624 (citations omitted). As the Second Circuit has pointed out: "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 & n. 2 (2nd Cir.1974), overruling on other grounds recognized by U.S. Football League v. Nat'l Football League, 887 F.2d 408, 415 (2nd Cir.1989).[6]
 
 VII
 
 32
 Appellants' final argument is that the district court erred by failing to make findings of fact regarding the objections to the class settlement. This court has held that a district court need not respond to objections with findings of fact and conclusions of law if the court "provide[s] a reasoned response elsewhere in the record." In re Pacific Enterprises Sec. Lit., 47 F.3d 373, 377 (9th Cir.1995). In In re Pacific Enterprises, this court held that a district judge satisfied this procedural requirement even though he stated in conclusory fashion that the settlement was "fair, reasonable and adequate" where the record reflected that the judge held an extensive hearing where he responded to objections. Id.
 
 
 33
 In this case the district judge held a fairness hearing, to which he invited all objectors, and responded to the objections raised. In addition, the district judge outlined those objections, gave his responses, and stated why he believed the settlement to be fair, reasonable, and adequate in a 16-page Order and a 7-page Judgment. There is no merit to the argument that the district judge failed to provide a reasoned response to the objections raised.
 
 VIII
 
 34
 We affirm the district court's judgment certifying the class and settlement in this case. There is no per se rule that the continued participation by previous class counsel, whose conflict of interest led the district court previously to deny class certification, constitutes inadequate representation under Rule 23(a). In all other respects, the vague, conclusory, and often unsupported arguments of appellants provide no basis for holding that the district court abused its discretion.
 
 
 35
 AFFIRMED.
 
 
 
 *
 The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 [1]
 The three additional complaints, asserting claims similar to those originally asserted in the Linney action, were also filed after the district court rejected the first settlement
 
 
 [2]
 Appellants do not argue that the class failed to meet the first three requirements of Rule 23(a): that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, [and] (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class...." Appellants merely argue that the district court erred by signing a form order without conducting an independent review of the facts and without making specific findings as to these factors. This argument is belied by the district court's reasoning contained in the record
 
 
 [3]
 Similarly, this class action was properly certified under Fed.R.Civ.P. 23(b)(2), which provides that, in addition to satisfying the prerequisites of Rule 23(a), a class action may be maintained if: "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." This court has held that "[c]lass actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages." Probe v. State Teachers' Retirement Sys., 780 F.2d 776, 780 (9th Cir.1986)
 
 
 [4]
 Section 4 of the Clayton Act merely provides treble damages for "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws...." 15 U.S.C. § 15(a). Appellants never specify what, if anything, was forbidden in the antitrust laws in this case. Cal Bus. & Prof.Code § 17200 does nothing more than define unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Again, appellants never specify what unlawful business acts are implicated under this section
 
 
 [5]
 Appellants also argue that the district court abused its discretion by denying class members discovery into the settlement negotiations in order to discover "the details of any agreement between class counsel and Carcione/Tanke to divide attorneys' fees." However, this discovery request was not made before the district court and thus has been waived. See Broad v. Sealaska Corp., 85 F.3d 422, 430 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 768, 136 L.Ed.2d 714 (1997) (holding that the appellate court will not generally hear an issue raised for the first time on appeal)
 
 
 [6]
 Appellants also argue that the district court abused its discretion by denying plaintiffs the right to opt-out of the monetary relief portion of the settlement. However, appellants provide no reason why the district court should have allowed class members to opt-out. This court has held that the option to opt-out is discretionary in cases, like this one, brought under Rule 23(b)(2). See Crawford, 37 F.3d at 487 n. 2 (noting that Rule 23(b)(2) does not require the option to opt-out but a court in its discretion may provide one)