# United States Court of Appeals
# for the Federal Circuit

---

**PETER H. BEER, TERRY J. HATTER, JR.,
RICHARD A. PAEZ, LAURENCE H. SILBERMAN,
A. WALLACE TASHIMA AND U. W. CLEMON,**
*Plaintiffs-Appellants,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2010-5012

---

Appeal from the United States Court of Federal Claims in case no. 09-CV-037, Senior Judge Robert H. Hodges, Jr.

---

CHRISTOPHER LANDAU, Kirkland & Ellis, LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief were JOHN C. O'QUINN and K. WINN ALLEN.

BRIAN M. SIMKIN, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for the defendant-appellee. With him on the brief were TONY WEST, Assistant Attorney General, Jeanne E. Davidson, Director, and MICHAEL S. MACKO, Trial Attorney.

JEFFREY A. LAMKEN, MoloLamken LLP, of Washington, DC, for amicus curiae. With him on the brief were MARTIN V. TOTARO and LUCAS M. WALKER.

---

Before BRYSON, MAYER, and DYK, *Circuit Judges*.

Order for the court filed by *Circuit Judge* DYK. Concurrence filed by *Circuit Judge* MAYER.

DYK, *Circuit Judge*.

## ORDER

This case returns to us on remand from the Supreme Court. The Court ordered us to determine "the question of preclusion." *Beer v. United States*, 131 S. Ct. 2865, 2865 (2011). We hold that the plaintiffs' claims are not precluded by our prior decision in *Williams v. United States*, 240 F.3d 1019 (Fed. Cir. 2001), *cert. denied*, 535 U.S. 911 (2002). But, as *Williams* remains binding precedent on this panel, we again affirm the judgment of the Court of Federal Claims granting summary judgment in favor of the government.

## BACKGROUND

This case involves the question of whether various congressional enactments violate the Compensation Clause by reducing the compensation of Article III federal judges. The Ethics Reform Act of 1989 ("the ERA"), Pub. L. No. 101-194, 103 Stat. 1716, put in place a system whereby federal judges were to receive yearly cost-of-living salary adjustments ("COLAs"). Under the ERA, once a determination was made by Congress that COLAs would be given to federal employees on the General Schedule for a given year, COLAs would also be granted to federal judges, "effective at the beginning of the first applicable pay period" for the COLAs on the General

Schedule, 28 U.S.C. § 461(a)(1), and up to a maximum of five percent each year, ERA § 704(a)(1)(B).

Prior to the calendar years 1995, 1996, 1997, and 1999, in which COLAs were provided to General Schedule employees, Congress passed separate legislation that blocked the payment of COLAs to federal judges.[1]  *See* Treasury, Postal Service and General Government Appropriations Act of 1995 § 630(a), 108 Stat. at 2424 (blocking 1995 COLA); Treasury, Postal Service and General Government Appropriations Act of 1996, Pub. L. No. 104-52, § 633, 109 Stat. 468, 507 (1995) (blocking 1996 COLA); Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208, § 637, 110 Stat. 3009, 3009-364 (1996) (blocking 1997 COLA); Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, § 621, 112 Stat. 2681, 2681-518 (1998) (blocking 1999 COLA).  Each of those blocking acts became law prior to first day of the year that the blocking became effective, i.e., before the first day when federal

---

[1]  For example, the blocking legislation for 1995 provided: "(a)(1) The adjustment in rates of basic pay for the statutory pay systems that takes effect in fiscal year 1995 under section 5303 of title 5, United States Code, shall be an increase of 2 percent.  (2) For purposes of each provision of law amended by section 704(a)(2) of the Ethics Reform Act of 1989 (5 U.S.C. 5318 note), no adjustment under section 5303 of title 5, United States Code, shall be considered to have taken effect in fiscal year 1995 in the rates of basic pay for the statutory pay systems." Treasury, Postal Service and General Government Appropriations Act of 1995, Pub. L. No. 103-329, § 630(a), 108 Stat. 2382, 2424 (1994).

judges would have received the adjustment to their salaries.

In 1997, a group of Article III federal judges filed a class action complaint in the United States District Court for the District of Columbia, alleging that the blocking legislation for the years 1995, 1996, and 1997, violated the Compensation Clause by diminishing their compensation. Jurisdiction was predicated on the Little Tucker Act, 28 U.S.C. § 1346, and, after an amendment to the complaint, on the district court's general federal question jurisdiction, 28 U.S.C. § 1331. The plaintiffs' requested relief was framed as declaratory relief, asking the court, for example, to "declare" that the blocking legislation was "unconstitutional and void," and to "declare" that the plaintiffs were "entitled to damages in an amount to be determined by the Court." Complaint at 18, *Williams v. United States*, 48 F. Supp. 2d 52 (D.D.C. 1999) (No. 97-CV-3106).

Federal Rule of Civil Procedure 23 provides for two types of class actions that could potentially be certified in the circumstances of the *Williams* case—a Rule 23(b)(2) class action or a Rule 23(b)(3) class action. A Rule 23(b)(2) class action involves requests for "injunctive relief or corresponding declaratory relief" and does not in terms require notice to the class. *See* Fed. R. Civ. P. 23(c)(2)(A). It also does not require opt-out procedures. A Rule 23(b)(3) class action typically involves claims for past damages and requires notice and opt-out procedures. *See* Fed. R. Civ. P. 23(c)(2)(B). The district court in *Williams* certified the class under Rule 23(b)(2), with the class including "[a]ll persons who served as Judges of the United States pursuant to Article III of the Constitution" at any time during the years 1995, 1996, and 1997. Class Certification Order at 2, *Williams*, 48 F. Supp. 2d 52 (No. 97-CV-3106). According to the minimum requirements

for Rule 23(b)(2) classes, the court did not provide the absent class members with notice or an opportunity to opt out of the litigation. *See id.*

On July 15, 1999, the district court in *Williams* held that the blocking statutes for the years 1995, 1996, and 1997, violated the Compensation Clause. 48 F. Supp. 2d at 65. Thus the class was declared to be "entitled to cost-of-living adjustments for 1995, 1996 and 1997, together with all other benefits which should have accrued to them based upon those adjustments." *Id.* In another class action filed in the same district court by the same *Williams* plaintiffs, the district court considered the blocking legislation for 1999. The district court ordered that "the plaintiffs and the members of their class shall receive . . . cost-of-living adjustment[s], pursuant to the Ethics Reform Act of 1989, for fiscal year 1999, together with all other benefits which should have accrued to them based upon those adjustments." Order, *Williams v. United States*, No. 99-CV-1982, slip op. at 1-2 (D.D.C. Dec. 29, 1999). In a later filed opinion, the district court explained that, similar to its holding in *Williams*, 48 F. Supp. 2d 52, with respect to the 1995, 1996, and 1997 blocking statutes, the blocking statute for 1999 also violated the Compensation Clause. Memorandum, *Williams v. United States*, No. 99-CV-1982, slip op. at 4 (D.D.C. Jan. 13, 2000). We consolidated these two class actions on appeal, *see Williams v. United States*, 240 F.3d at 1025 n.1, and they are collectively referred to as the "*Williams* litigation."

On appeal, this court held that "the district court possessed Little Tucker Act jurisdiction," "at least as to the Judges' prayer for relief for the 1995 year, since each individual judge would receive less than $10,000 for the unpaid COLA for that year." *Williams*, 240 F.3d at 1025. With respect to the merits of the case, we held that the

blocking legislation at least for 1995, preventing COLAs established in the ERA from taking effect (before those COLAs "vested"), was not unconstitutional. *Id.* at 1032, 1039-40. In this respect, we held that the result was dictated by the Supreme Court's decision in *United States v. Will*, 449 U.S. 200 (1980). One judge dissented. On February 16, 2001, the same day that a panel of this court decided *Williams*, the court declined to hear the case en banc, with three judges dissenting. *Williams v. United States*, 264 F.3d 1089 (Fed. Cir. 2001). Subsequently, the Supreme Court denied the plaintiffs' petition for certiorari, with three Justices dissenting. *Williams v. United States*, 535 U.S. 911 (2002).

On November 28, 2001, Congress enacted further legislation affecting judicial pay. *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 2002, Pub. L. No. 107-77, § 625, 115 Stat. 748, 803 (2001) (the "2001 legislation"). Instead of proceeding in a piecemeal fashion to block the COLAs, the 2001 legislation broadly provided:

> [N]one of the funds appropriated by this joint resolution or by any other Act shall be obligated or expended to increase . . . any salary of any Federal judge or Justice of the Supreme Court, except as may be specifically authorized by Act of Congress hereafter enacted. . . . This section shall apply to fiscal year 1981 and each fiscal year thereafter.

Act of Dec. 15, 1981, Pub. L. No. 97-92, § 140, 95 Stat. 1183, 1200, *amended by* § 625, 115 Stat. at 803. For fiscal year 2007, Congress enacted legislation providing COLAs for federal employees on the General Schedule, but did not enact legislation providing COLAs for federal judges, and accordingly, federal judges received no COLA for that year. Article III judges were granted COLAs in years

2002, 2003, 2004, 2005, 2006, and 2008, but these adjustments did not reflect the disputed 1995, 1996, 1997, and 1999 COLAs.

On January 16, 2009, the plaintiffs, all members of the certified class in *Williams*, but not named plaintiffs in the *Williams* litigation, filed the present suit in the Court of Federal Claims under the Tucker Act, seeking back pay for the failure to receive COLAs in 1995, 1996, 1997, 1999, and 2007, as well as declaratory relief that Congress may not in the future withhold COLAs as provided by the ERA. The plaintiffs pointed out that, not only did each denial of COLAs impact judicial salaries for that year, but it also affected the base salaries from which COLAs were or were not granted in subsequent years.

The government moved for summary judgment on the ground that, as a matter of stare decisis, the suit was barred by our *Williams* decision, and on the alternative ground that, *inter alia*, the suit was barred by "res judicata" because of the earlier *Williams* judgment. *See* Order, *Beer v. United States*, No. 09-37C, slip op. at 1 (Fed. Cl. Oct. 16, 2009). Although the preclusion issue was designated by the government as an issue of "res judicata" at the Court of Federal Claims, it was more properly termed a question of collateral estoppel or issue preclusion.[2] While the claims in the present matter overlap with those in *Williams*, they are not identical, though the constitutional issues are identical.

---

[2] In the government's July 26, 2010, brief to the Supreme Court opposing certiorari and in the parties' additional briefing to this court regarding preclusion, the question is referred to as one of "issue preclusion." *See* Brief for U.S. Opposing Certiorari at 12, *Williams*, 535 U.S. 91 (No. 01-175); Appellant's Supplemental Br. at 4, 9; Appellee's Supplemental Br. at 10.

The Court of Federal Claims did not reach the issue preclusion question. Instead, the court found that an analysis of the "complex legal and constitutional issues" presented by the preclusion argument was not "an effective use of judicial resources" given the parties' agreement that the court "must dismiss plaintiffs' Complaint in light of the *Williams* precedent." Order, *Beer*, No. 09-CV-37, slip op. at 2. On October 16, 2009, the Court of Federal Claims dismissed the complaint, solely on the ground that the precedent set by "*Williams* forecloses [the] court's ability to grant plaintiffs the relief they seek." *Id.* (internal quotation marks omitted).

The plaintiffs appealed to this court. On January 15, 2010, a panel of this court summarily affirmed the judgment of the Court of Federal Claims. We agreed with the parties "that this court's opinion in *Williams* . . . controls the disposition of this appeal by a panel of this court," and accordingly summarily affirmed the decision of the Court of Federal Claims. *Beer v. United States*, 361 F. App'x 150, 151-52 (Fed. Cir. 2010). We did not reach the government's alternative preclusion argument. On the same day, the court denied a petition for hearing en banc, with four judges dissenting. *Beer v. United States*, 592 F.3d 1326 (Fed. Cir. 2010).

The plaintiffs subsequently petitioned for certiorari to the Supreme Court. In its opposition brief, the government argued that our decision in *Williams* was correct, and alternatively that plaintiffs were precluded from relitigating the Compensation Clause issue decided in *Williams* because they were members of the certified class in that case. On June 28, 2011, the Supreme Court granted certiorari, and entered the following order:

The judgment is vacated, and the case is remanded to the United States Court of Appeals for

the Federal Circuit for consideration of the question of preclusion raised by the Acting Solicitor General in his brief for the United States filed July 26, 2010. The Court considers it important that there be a decision on the question, rather than that an answer be deemed unnecessary in light of prior precedent on the merits.

*Beer v. United States*, 131 S. Ct. 2865, 2865-66 (2011).

## DISCUSSION

The preclusion question here is whether absent class members in an unsuccessful Rule 23(b)(2) class action, who did not receive notice of the pendency of the action, are subject to preclusion. The Supreme Court has held that absent class members may not challenge the certification of a Rule 23(b)(2) class on the grounds that the certification was improper under the Federal Rules of Civil Procedure. *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994) (per curiam). However, absent class members may later object to a res judicata or collateral estoppel bar on grounds of due process, for example, on the grounds that the absent class members were inadequately represented in the prior action, *see Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940), or did not receive constitutionally required notice, *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2559 (2011). Thus, the issue before us is whether the plaintiffs were entitled, as a matter of due process, to notice of the *Williams* litigation before being bound by the final judgment in *Williams*. If notice was required, we must also determine what constitutes sufficient notice to meet the requirements of due process. We address each of these two issues in turn.

I

As a general matter, there is "no doubt that at a minimum [due process] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). However, there may be an exception for certain injunctive class actions, perhaps on the theory that the right to injunctive relief does not constitute a traditional property interest.[3] Thus, language in some Supreme Court opinions, and various decisions of our sister circuits, have suggested that in some Rule 23(b)(2) class actions for injunctive or declaratory relief, notice and opt-out rights are not constitutionally required if the named plaintiffs were adequately representative of the class. For example, the Supreme Court in *Hansberry*, 311 U.S. at 42-43, stated that "members of a class not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present . . . ."[4]

---

[3] *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 266, 273 (1994) ("When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive."); *Am. Steel Foundries v. Tri-City Cent. Trades Council*, 257 U.S. 184, 201 (1921) (Court obligated to apply intervening legislation that eliminated a right to injunctive relief against labor picketing); *see also Benjamin v. Jacobson*, 172 F.3d 144, 164 (2d Cir. 1999) (en banc) ("[T]he provisions of a consent decree that order prospective relief remain subject to . . . changes in law" and are "neither final nor 'vested' in the constitutional sense."); *Plyler v. Moore*, 100 F.3d 365, 374-75 (4th Cir. 1996) (concluding that the plaintiffs "had no property right in the continued enforcement of a decree granting prospective relief").

[4] *See also Richards v. Jefferson Cnty.*, 517 U.S. 793, 800-801 (1996) (quoting *Hansberry*); *Johnson v. Gen. Motors Corp.*, 598 F.2d 432, 437 (5th Cir. 1979) ("When

However, the Supreme Court has not definitively decided whether absent class members in such actions are entitled to notice as a matter of due process. In *Wal-Mart*, the Supreme Court noted that "[Rule 23](b)(2) does not require that class members be given notice and opt out rights, presumably because it is thought (*rightly or wrongly*) that notice has no purpose when the class is mandatory, and that depriving people of their right to sue in this manner complies with the Due Process Clause." 131 S. Ct. at 2559 (emphasis added); *see also Richards*, 517 U.S. at 801 (noting the "*possibility* that in some class suits adequate representation might cure a lack of notice" (emphasis added)). The issue of whether notice is required in all injunctive or declaratory actions is not before us, and we do not address it. This case involves a far narrower question—whether absent class members are entitled to notice in class actions involving injunctive or declaratory claims as well as monetary claims.

It is well established that, in class actions seeking only monetary recovery, notice is essential to binding absent class members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). Indeed, for claims "wholly or predominately for money judgments," absent class members, as a matter of due process, "must receive notice plus an opportunity to be heard and participate in

---

only equitable relief is sought in an action involving a cohesive plaintiff group . . . , the due process interests of absent members will usually be safeguarded by adequate representation alone."); *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 165 (2d Cir. 2001) ("Where class-wide injunctive or declaratory relief is sought in a (b)(2) class action . . . , there is a presumption of cohesion and unity between absent class members and the class representatives such that adequate representation will generally safeguard absent class members' interests and thereby satisfy the strictures of due process.").

the litigation" as well as the opportunity to "opt out" before being precluded from pursuing individual damage claims. *Id.* at 811, 812 & n.3; *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1751 (2011) ("For a class-action money judgment to bind absentees in litigation, class representatives must at all times adequately represent class members, and absent members must be afforded notice, an opportunity to be heard, and a right to opt out of the class."); *Wal-Mart*, 131 S. Ct. at 2559 ("In the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process."). In other words, in a Rule 23(b)(3) class action for money damages, notice and opt-out rights are essential to due process. Adequate representation is not alone sufficient. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176-77 (1974).

The Supreme Court established in *Wal-Mart* that due process requires notice be given to absent class members when monetary claims are more than just "incidental" to the claims for injunctive or declaratory relief. *See Wal-mart*, 131 S. Ct. at 2557, 2559-60. *Wal-Mart* explicitly declined, however, to decide whether notice was required as a matter of due process when monetary claims were "incidental" to injunctive or declaratory claims in a class action. *Id.* at 2560. The Court held instead that the monetary claims in *Wal-Mart* were clearly not "incidental," because Wal-Mart was "entitled to individualized determinations" of its liability, affording Wal-Mart the opportunity to "show that it took [] adverse employment action[s] against [particular] employee[s] for any reason other than discrimination." *Id.* at 2560-61. Thus the Court stated: "We need not decide in this case whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2) we

have announced and that comply with the Due Process Clause." *Id.* at 2560.

As recognized in *Wal-Mart*, the source of the "incidental" concept lies in decisions of some of our sister circuits that concluded that a Rule 23(b)(2) class action could be certified without notice to absent class members in circumstances where monetary relief "is incidental to requested injunctive or declaratory relief." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998); *see also Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 581 (7th Cir. 2000) ("[C]ertification under Rule 23(b)(2), without notice or opportunity to opt out, is impermissible unless the requested monetary damages are 'incidental' to requested injunctive or declaratory relief."). But those cases did not involve issue preclusion, and did not decide whether notice was required as a matter of due process before binding absent class members.

Even if we were to assume that there could be an "incidental" exception for due process purposes, the question would remain as to the scope of the exception. The parties here disagree as to what monetary relief qualifies as "incidental." Citing *Allison*, the government argues that the monetary aspects of the claims in *Williams* were incidental because they "flow[ed] directly from liability to the class as a *whole*" and were "capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances." *Allison*, 151 F.3d at 415. The plaintiffs, on the other hand, argue that monetary relief is the quintessential remedy at law, readily divisible, and cannot be reduced to "incidental" status through a combination with a request for injunctive or declaratory relief. The plaintiffs further argue that the monetary aspect of *Williams* could not be incidental to the

requested declaratory relief because that requested declaratory relief was itself about an entitlement to money.

We agree with the plaintiffs that the incidental exception, if there is one, cannot apply where the requested injunctive or declaratory relief is directed to the payment of money. The requested relief in *Williams* was framed as declaratory relief, asking the court, for example, to "declare" that the blocking legislation was "unconstitutional and void," and to "declare" that the plaintiffs were "entitled to damages in an amount to be determined by the Court." Complaint at 18, *Williams*, 48 F. Supp. 2d 52 (No. 97-CV-3106). Thus the government conceded that the declaratory relief requested in *Williams* was itself directed to the payment of money, and the case was "essentially one for money damages." Brief of Defendant-Appellant at 24, *Williams*, 240 F.3d 1019 (No. 99-1572), 1999 WL 33607449.

It may be, as the government argues, that the "other than money damages" provision of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, turns on whether a request is for past damages or an order for payment of money in the future.[5] But, as far as the due process

---

[5] *See Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) ("The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'"). However, recent Supreme Court authority suggests that the APA may make no such distinction. "Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Bowen*, 487

right to notice is concerned, we are unable to distinguish between actions in which the suit is for past due money and those situations in which the action is for both past due money and the payment of future money. Nor are we aware of any cases in which other circuits have made such a distinction.[6] Indeed, the District of Columbia Circuit has held that notice is required in a class action seeking declaratory and injunctive relief that would merely "serve as a foundation for a damages award." *Richards v. Delta Airlines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006).

Because we conclude that both the prospective and retrospective aspects of the claims in *Williams* were essentially monetary in nature, we hold that due process does not allow the plaintiffs' claims in the present suit to be precluded by *Williams* in the absence of notice of the *Williams* class. In other words, *Williams* was a case in which money claims predominated and in which, accordingly, notice to absent class members was required as a matter of due process. We need not address whether opt-out rights are also required as a matter of due process.

## II

The government argues that even if notice were required, the due process notice obligation was satisfied because the plaintiffs here received actual notice of the

_____

U.S. at 918-19 (Scalia, J., dissenting)) (internal quotation marks omitted).

[6]     The class certification cases such as *Allison* all involved claims for non-monetary declaratory or injunctive relief. *See, e.g.*, *Allison*, 151 F.3d at 407 (seeking "restructuring of offending [discriminatory] policies" and "instatement into existing jobs"); *see also, e.g.*, *James v. City of Dallas, Tex.*, 254 F.3d 551, 572 (5th Cir. 2001) (seeking removal of liens and the clearing of titles).

*Williams* litigation while it was pending. We consider whether actual notice is sufficient.

The government's theory is that the plaintiffs received actual notice of the *Williams* suit through the press, and specifically through an article in *The Third Branch*,[7] a monthly newsletter distributed by the Administrative Office of the United States Courts to the federal judiciary. The government requests at least a remand to the trial court so that a record can be developed with respect to whether plaintiffs in fact had actual notice of *Williams*. We hold that actual informal notice is insufficient to satisfy due process, making such a remand unnecessary.

The government relies on *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367 (2010), to support its argument that actual notice is sufficient. However, the government's reliance on *United* is misplaced. *United* involved a bankruptcy proceeding whereby the debtor sought to obtain a discharge of a government-sponsored student loan debt via an "undue hardship" determination. *Id.* at 1373. Though the debtor failed to serve United with the proper summons and complaint in order to initiate an adversary proceeding, the bankruptcy court mailed notice and a copy of the debtor's discharge plan to

---

[7]    The article stated in relevant part: "Twenty U.S. court of appeals and district court judges have filed a class action suit in the U.S. District Court for the District of Columbia (*Williams v. United States*) seeking to restore cost-of-living adjustments (COLAs) denied to the Judiciary from 1994 to 1997. The lawsuit claims congressional denial of annual COLAs provided under the Ethics Reform Act of 1989, coupled with inflation, have led to an unconstitutional erosion of judicial compensation. The constitutional claim, according to the lawsuit, is based on Article III, section 1, which provides that a judge's compensation may not be reduced." *Lawsuit Seeks to Restore COLAs*, The Third Branch, Feb. 1998, at 2.

United. *Id.* at 1373-74. The Supreme Court found that the debtor's "failure to serve United with a summons and complaint deprived United of a right granted by a procedural rule . . . [b]ut this deprivation did not amount to a violation of United's constitutional right to due process." *Id.* at 1378. The procedural shortcomings of the debtor were of no constitutional concern because "United received *actual* notice of the filing and contents of [the debtor's] plan" from the bankruptcy court, including the information United needed "for filing a proof of claim or an objection to the plan." *Id.* at 1374, 1378. Here, unlike *United*, there was no formal notice regarding the pendency of the claims. *United* hardly supports the proposition that informal notice through an article in a newsletter satisfies due process because formal notice was provided.

The Supreme Court has recognized the fundamental importance of providing a party with formal notice before binding them to a judgment. The Court's decision in *Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000), is in fact quite similar to this case in rejecting the proposition that actual notice is sufficient. In *Nelson*, a trial court added the president and sole shareholder of a defendant company to a judgment against that company without affording him, in his individual capacity, formal notice or an opportunity to be heard. *Id.* at 462-63. The Supreme Court noted that Nelson "knew as soon as Adams moved to amend the pleading and alter the judgment that he might ultimately be subjected to personal liability." *Id.* at 466. But despite Nelson's actual knowledge of the circumstances, he could not be added to the judgment, as a matter of due process, without first receiving formal notice and being given an opportunity to be heard. *Id.* at 465-67.

In this case, it is undisputed that the plaintiffs did not receive formal notice of the class certification in *Williams* from either the court or the class representatives. "[D]ue process . . . demand[ed] a more reliable and orderly course." *Id.* at 467. Though *Nelson* involved the provision of notice to a defendant as opposed to an absent class member, we find no basis for distinguishing between the two, as each were entitled to notice. Consistent with this principle, we hold that when absent class members are entitled to notice as a matter of due process, formal notice must be provided advising absent class members of the pendency of the action and their right to participate before being precluded from bringing their own action.

### III

In summary, we hold that the plaintiffs are not precluded by the *Williams* litigation from bringing their Compensation Clause claims in the present case. However, there has been no intervening precedent bearing on the underlying constitutional issue since our prior affirmance on January 15, 2010. There we stated: "The parties agree, and we must also agree," that "this court's opinion in *Williams* . . . controls the disposition of this appeal by a panel of this court." *Beer*, 361 F. App'x at 151-52. Accordingly, we must again affirm the judgment of the Court of Federal Claims. If the original *Williams* panel was mistaken in its interpretation of the *Will* case, the remedy lies with this court en banc, with the Supreme Court, or with Congress.

Accordingly,

IT IS ORDERED THAT:

The judgment of the Court of Federal Claims is affirmed.

FOR THE COURT


February 17, 2012                    /s/ Jan Horbaly
Date                                 Jan Horbaly
                                     Clerk

# United States Court of Appeals for the Federal Circuit

---

**PETER H. BEER, TERRY J. HATTER, JR.,
RICHARD A. PAEZ, LAURENCE H. SILBERMAN,
A. WALLACE TASHIMA AND U. W. CLEMON,**
*Plaintiffs-Appellants,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2010-5012

---

Appeal from the United States Court of Federal Claims in case no. 09-CV-037, Senior Judge Robert H. Hodges, Jr.

---

MAYER, *Circuit Judge*, concurring.

I join the court's opinion, but I continue to believe *Williams v. United States* was wrongly decided for the reasons set out in my opinion dissenting from the refusal to rehear that case *en banc*. 264 F.3d 1089, 1090-93 (Fed. Cir. 2001).