Opinion for the court filed by Chief Judge RADER, in which Circuit Judges NEWMAN, MAYER, LOURIE, LINN, PROST, MOORE, O’MALLEY, REYNA and WALLACH join.
Dissenting opinion filed by Circuit Judge DYK, in which Circuit Judge BRYSON joins.
Concurring opinion filed by Circuit Judge O’MALLEY, in which Circuit Judges MAYER and LINN join.
Concurring opinion filed by Circuit Judge WALLACH.
RADER, Chief Judge.
The Constitution erects our government on three foundational corner stones — one of which is an independent judiciary. The foundation of that judicial independence is, in turn, a constitutional protection for judicial compensation. The framers of the Constitution protected judicial compensation from political processes because “a power over a man’s subsistence amounts to a power over his will.” The Federalist No. 79, p. 472 (Alexander Hamilton) (Clinton Rossiter ed., 1961). Thus, the Constitution provides that “Compensation” for federal judges “shall not be diminished during their Continuance in Office.” U.S. Const, art. Ill, § 1 (“Compensation Clause”).
This case presents this court with two issues involving judicial independence and constitutional compensation protections— one old and one new. First, the old question: does the Compensation Clause of Article III of the Constitution prohibit Congress from withholding the cost of living adjustments for Article III judges provided for in the Ethics Reform Act of 1989 (“1989 Act”)? To answer this question, this court revisits the Supreme Court’s decision in United States v. Will, 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). Over a decade ago in Williams v. United States, 240 F.3d 1019 (Fed.Cir.2001) (filed with dissenting opinion by Plager, J.), a divided panel of this court found that Will applied to the 1989 Act and concluded that Congress could withdraw the promised 1989 cost of living adjustments. This court en banc now overrules Williams and *1177 instead determines that the 1989 Act triggered the Compensation Clause’s basic expectations and protections. In the unique context of the 1989 Act, the Constitution prevents Congress from abrogating that statute’s precise and definite commitment to automatic yearly cost of living adjustments for sitting members of the judiciary.
The new issue involves pure statutory interpretation, namely, whether the 2001 amendment to Section 140 of Pub. L. No. 97-92 overrides the provisions of the 1989 Act. This court concludes the 1989 Act was enacted after Section 140, and as such, the 1989 Act’s automatic cost of living adjustments control.
I.
The 1989 Act overhauled compensation and ethics rules for all three branches of government. With respect to the judiciary, it contained two reciprocal provisions. On the one hand, the 1989 Act limited a federal judge’s ability to earn outside income and restricted the receipt of honoraria. On the other hand, the 1989 Act provided for self-executing and non-discretionary cost of living adjustments (“COLA”) to protect and maintain a judge’s real salary.
The 1989 Act provides that whenever a COLA for General Schedule federal employees takes effect under 5 U.S.C. § 5303, the salary of judges “shall be adjusted” based on “the most recent percentage change in the [Employment Cost Index] ... as determined under section 704(a)(1) of the Ethics Reform Act of 1989.” Pub. L. No. 101-194, § 704(a)(2)(A), 103 Stat. 1716, 1769 (Nov. 30, 1989). The Employment Cost Index (“ECI”) is an index of wages and salaries for private industry workers published quarterly by the Bureau of Labor Statistics. Section 704(a)(1) of the 1989 Act calculates COLAs by first determining the percent change in the ECI over the previous year. Id. at § 704(a)(1)(B). Next, the statutory formula reduces the ECI percentage change by “one-half of 1 percent ... rounded to the nearest one-tenth of 1 percent.” Id. However, no percentage change determined under Section 704(a)(1) shall be “less than zero” or “greater than 5 percent.” Id.
While the 1989 Act states that judicial salary maintenance would only occur in concert with COLAs for General Schedule federal employees under 5 U.S.C. § 5303, these General Schedule COLAs are automatic, i.e., they do not require any further congressional action. See 5 U.S.C. § 5303(a). The only limitation on General Schedule COLAs is a presidential declaration of a “national emergency or serious economic conditions affecting the general welfare” making pay adjustments “inappropriate.” 5 U.S.C. § 5303(b).
Notwithstanding the precise, automatic formula in the 1989 Act, the Legislative branch withheld from the Judicial branch those promised salary adjustments in fiscal years 1995, 1996, 1997, and 1999. During these years, General Schedule federal employees received the adjustments under Section 5303(a), but Congress blocked the adjustments for federal judges. See Pub. L. No. 103-329, § 630(a)(2), 108 Stat. 2382, 2424 (Sept. 30, 1994) (FY 1995); Pub. L. No. 104-52, § 633,109 Stat. 468, 507 (Nov. 19, 1995) (FY 1996); Pub. L. No. 104-208, § 637, 110 Stat. 3009, 3009-364 (Sept. 30, 1996) (FY 1997); Pub. L. No. 105-277, § 621, 112 Stat. 2681, 2681-518 (Oct. 21, 1998) (FY 1999).
In response to these missed adjustments, several federal judges filed a class action alleging these acts diminished their compensation in violation of Article III. After certifying a class of all federal judges serving at the- time (including appellants) and without providing notice or *1178 opt-out rights, the district court held that Congress violated the Compensation Clause by blocking the salary adjustments. See Beer v. United States, 671 F.3d 1299, 1308-09 (Fed.Cir.2012); Williams v. United States, 48 F.Supp.2d 52 (D.D.C.1999).
On appeal, this court reversed the district court’s judgment. See Williams, 240 F.3d at 1019. This court opined that the Supreme Court’s decision in Will foreclosed the judges’ claim as a matter of law. Id. at 1033, 1035, 1040. According to this court, Will ruled that promised future salary adjustments do not qualify as “Compensation” protected under the Constitution until they are “due and payable.” Id. at 1032 (quoting Will, 449 U.S. at 228, 101 S.Ct. 471). Thus, Congress enjoyed full discretion to revoke any future judicial COLAs previously established by law, no matter how precise or definite, as long as the adjustments had not yet taken effect. Id. at 1039. This court declined to hear the case en banc over the dissent of three judges. See 264 F.3d 1089, 1090-93 (Fed. Cir.2001) (Mayer, C.J., joined by Newman and Rader, JJ.); id. at 1093-94 (Newman, J., joined by Mayer, C.J. and Rader, J.). The Supreme Court denied certiorari over the dissent of three Justices. See 535 U.S. 911, 122 S.Ct. 1221, 152 L.Ed.2d 153 (2002) (Breyer, J., joined by Scalia and Kennedy, JJ., dissenting from denial of certiorari).
Following this court’s decision in Williams, Congress amended a 1981 appropriations rider commonly known as Section 140. Section 140 originally read:
Notwithstanding any other provision of law or of this joint resolution, none of the funds appropriated by this joint resolution or by any other Act shall be obligated or expended to increase, after the date of enactment of this joint resolution, any salary of any Federal judge or Justice of the Supreme Court, except as may be specifically authorized by Act of Congress hereafter enacted: Provided,. That nothing in this limitation shall be construed to reduce any salary which may be in effect at the time of enactment of this joint resolution nor shall this limitation be construed in any manner to reduce the salary of any Federal judge or of any Justice of the Supreme Court.
Pub. L. No. 97-92, § 140, 95 Stat. 1183, 1200 (1981) (codified at 28 U.S.C. § 461 note) (emphasis added). While Section 140 originally expired in 1982, see Williams, 240 F.3d at 1026-27, it was revived- by a 2001 amendment that added: “This section shall apply to fiscal year 1981 and each fiscal year thereafter.” Pub. L. No. 107-77, § 625, 115 Stat. 748, 803 (Nov. 28, 2001).
Following the Section 140 amendment, Congress enacted legislation specifically allowing federal judges to receive the salary adjustments mandated by the 1989 Act in fiscal years 2002, 2003, 2004, 2005, 2006, 2008, and 2009. See Barbara L. Schwemle, Congressional Research Service, Legislative, Executive, and Judicial Officials: Process for Adjusting Pay and Current Salaries 2-4 (Feb. 9, 2011). For fiscal years 2007 and 2010, all General Schedule and Executive level federal employees received COLAs under 5 U.S.C. § 5303(a), but federal judges received no adjustments. Congress did not affirmatively authorize judicial COLAs in those years and took the position that, because of the requirements of Section 140, judicial COLAs could not be funded.”
The current case results from the combination of the blocking legislation of the 1990s and the amendment to Section 140. Appellants , are six current and former Article III judges, all of whom entered into federal judicial service before 2001. In January 2009, they filed a complaint in the United States Court of Federal Claims *1179 claiming that Congress violated the Compensation Clause by withholding the salary adjustments established by the 1989 Act. They claimed a deficit resulted not only from the withholding of COLAs in 2007 and 2010, but also the calculation of adjustments due in other years by reference to base compensation that did not include the amounts withheld in 1995, 1996, 1997, and 1999. For relief, they sought back pay for the additional amounts they allegedly should have received during the period covered by the applicable six-year statute of limitations.
The Court of Federal Claims dismissed the complaint based on the Williams precedent. On appeal, this court summarily affirmed the judgment, stating that “Williams controls the disposition of this matter.” Beer v. United States, 361 Fed. Appx. 150, 151-52 (Fed.Cir.2010).
The Supreme Court granted the subsequent petition for certiorari, vacated the judgment, remanded the case for “consideration of the question of preclusion,” and stated that “further proceedings ... are for the Court of Appeals to determine.” Beer v. United States, — U.S. -, 131 S.Ct. 2865, 180 L.Ed.2d 909 (2011). Specifically, in opposing the petition for certiorari, the Government had argued that Appellants could not litigate anew the issue resolved in Williams because they had been absent members of the class action in Williams.
Upon remand, this court unanimously concluded that Appellants were not precluded from bringing their Compensation Clause claims in the present case. Beer v. United States, 671 F.3d 1299, 1309 (Fed. Cir.2012). The district court in Williams had not provided Appellants with notice of the class certification. Thus they were not bound by the result of that earlier litigation. See id. at 1305-09. This court nonetheless continued to feel constrained by the ultimate conclusion in Williams and affirmed the Court of Federal Claims’ dismissal of the complaint. Id. at 1309. Subsequently, this court granted Appellants’ petition for rehearing en banc. 468 Fed. Appx. 995 (Fed.Cir.2012).
II.
This court has jurisdiction over the Court of Federal Claims’ dismissal of the Appellants’ complaint under 28 U.S.C. § 1295(a)(3). This court reviews the decision to dismiss the complaint without deference. Hearts Bluff Game Ranch, Inc. v. United States, 669 F.3d 1326, 1328 (Fed. Cir.2012); Frazer v. United States, 288 F.3d 1347, 1351 (Fed.Cir.2002).
This court en banc now turns its attention to two preliminary issues before addressing the merits of the appeal. First, judicial review of laws affecting judicial compensation is not done lightly as these cases implicate a conflict of interest. Will, 449 U.S. at 211-17, 101 S.Ct. 471. After all, judges should disqualify themselves when their impartiality might reasonably be questioned or when they have a potential financial stake in the outcome of a decision. See 28 U.S.C. § 455(a). In Will, the Supreme Court applied the time-honored “Rule of Necessity” because if every potentially conflicted judge were disqualified, then plaintiffs would be left without a tribunal to address their claims. See Will, 449 U.S. at 213-17, 101 S.Ct. 471. The Rule of Necessity states that “although a judge had better not, if it can be avoided, take part in the decision of a case in which he has any personal interest, yet he not only may but must do so if the case cannot be heard otherwise.” Id. at 213, 101 S.Ct. 471 (quoting F. Pollack, A First Book of Jurisprudence 270 (6th ed. 1929)) (emphasis added). This court relies on the Supreme Court’s complete analysis of the Rule of Necessity and concludes that this *1180 en banc court may, indeed must, hear the case. See id. at 211-18, 101 S.Ct. 471.
On the other preliminary procedural question, this court deliberately limits the questions under review. To be specific, this court en banc does not overrule the Williams panel’s analysis of Section 140. See 240 F.3d at 1026-27. Furthermore, it does not overrule the Beer panel’s analysis of preclusion. See 671 F.3d 1299. This court adopts the prior panel’s analysis of the preclusion issue in toto. Now the court en banc proceeds to the old and new questions previously set forth.
III.
At the outset, this court must honor and address the Supreme Court’s decision in Will. As the Williams panel correctly noted, if Will resolves the validity of Congress’ decision to block the COLAs promised in the 1989 Act, then any remedy for salary diminution in this case lies not in this court but in the Supreme Court. See Williams, 240 F.3d at 1035. However, if Will is inapplicable to the statutory scheme at play in this case, then this court has an obligation to resolve the issue.
United States v. Will, supra, tested the validity of congressional blocking acts preventing COLAs provided for under the 1975 Adjustment Act (“1975 Act”). The 1975 Act purported to protect judicial salaries with adjustments calculated under an opaque and indefinite process. Section 5305, as in effect in 1975, directed the President to “carry out the policy stated in section 5301” when giving COLAs to General Schedule federal employees. 5 U.S.C. § 5305(a) (1976). Section 5301 in turn articulated a four-fold policy for setting federal pay: (1) equal pay for equal work; (2) pay distinction based on work and performance distinctions; (3) comparable pay with private sector jobs for comparable work; and (4) interrelated statutory pay levels. 5 U.S.C. § 5301(a) (1976).
In furtherance of this policy, the President appointed an agent to prepare an annual report on federal salaries. 5 U.S.C. § 5305(a)(1) (1976). This annual report relied on statistics from the Bureau of Labor Statistics on private sector pay, views of the “Federal Employees Pay Council” about the comparability of private and public sector pay systems, and the views of employee organizations not represented in the Council. 5 U.S.C. § 5305(a)(1) (1976). This report did not and could not mandate the award of COLAs.
The President also received a report from “The Advisory Committee on Federal Pay.” 5 U.S.C. § 5305(a)(2) (1976). This committee reviewed the report issued by the President’s agent under section 5305(a)(1) and considered further views and recommendations provided by “employee organizations, the President’s agent, other officials of the Government of the United States, and such experts as it may consult.” 5 U.S.C. § 5306(a)-(b) (1976).
Based on these reports, the President could provide COLAs to General Schedule federal employees. 5 U.S.C. § 5305(a)(2). If the President decided to recommend an adjustment, he would transmit to Congress the overall adjustment percentage. 5 U.S.C. § 5305(a)(3). Any judicial COLAs were pegged to the “overall percentage” in the President’s report to Congress under section 5305. 28 U.S.C. § 461 (1976).
Despite the 1975 Act, Congress allowed several COLAs for General Schedule federal employees but denied the increases to judges and other senior officials. The Supreme Court discussed the details of the legislation that blocked these increases. See Will, 449 U.S. at 205-09, 101 S.Ct. 471. In 1978, a group of federal judges filed suit *1181 alleging this blocking legislation was an unconstitutional diminution in salary contrary to Article III. Once the case made its way to the Supreme Court, the Court considered “when, if ever, ... the Compensation Clause prohibits] the Congress from repealing salary increases that otherwise take effect automatically pursuant to a formula previously enacted.” Id. at 221, 101 S.Ct. 471. The Court concluded that Congress could block COLAs due to judges so long as the blocking legislation took effect in the fiscal year prior to the year in which the increase would have become payable. Id. at 228-29, 101 S.Ct. 471. According to the Court, “a salary increase ‘vests’ ... only when it takes effect as part of the compensation due and payable to Article III judges.” Id. at 229, 101 S.Ct. 471.
The 1989 Act, informed by the failures of the 1975 Act’s procedure, adopted a different purpose, used a different structure, and created different expectations than the 1975 Act. The 1975 Act “involved a set of interlocking statutes which, in respect to future cost-of-living adjustments, were neither definite nor precise.” Williams, 535 U.S. at 917, 122 S.Ct. 1221 (Breyer, J., joined by Scalia and Kennedy, JJ., dissenting from denial of certiorari). Instead of being tied to the percent change in a known, published metric of inflation such as the Employment Cost Index, the adjustments under the 1975 Act depended on the discretionary decisions of the President’s agent and the Advisory Committee on Federal Pay. Furthermore, the President was not obligated to award adjustments to General Schedule employees on a specific timeline or even pursuant to the suggestions from the agent and the committee. Rather, he only did so if it furthered the policies underpinning federal pay articulated in 5 U.S.C. § 5301. Thus, the method for calculating COLAs under the 1975 Act was “imprecise as to amount and uncertain as to effect.” Id.
By contrast, the 1989 Act promised a mechanical implementation of COLAs for judges under the following equation:
[[Image here]]
See Pub. L. No. 101-194, § 704(a)(1)(B), 103 Stat. 1716, 1769 (Nov. 30, 1989). The Act contained only two limits: a presidential prohibition (due to national emergency or extreme economic circumstances) and a ceiling (of no more than five percent). Id.
In essence, the statutes reviewed in Will required judicial divination to predict a COLA and prevented the creation of firm expectations that judges would in fact receive any inflation-compensating adjustment. In that context, as the Supreme Court noted, no adjustment vested until formally enacted and received. However, the statutes reviewed in Williams and in this case provide COLAs according to a mechanical, automatic process that creates expectation and reliance when read in light of the Compensation Clause. Indeed a prospective judicial nominee in 1989 might well have decided to forego a lucrative legal career, based, in part, on the promise that the new adjustment scheme would preserve the real value of judicial compensation.
Aside from their respective differences in methods for calculating COLAs, the 1989 Act’s overall scope and legislative history distinguishes it from the statutory scheme addressed in Will. In fact, the automaticity of the 1989 Act’s COLAs takes on heightened significance in light of *1182 the broader statutory scheme because the 1989 Act also banned judges from earning outside income and honoraria. See Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (“The meaning of statutory language, plain or not, depends on its context.”). In sum, the salary protections in the 1989 Act are only part of a comprehensive codification of ethical rules, Pub. L. No. 101-194 §§ 301-03, financial reporting requirements, id. at § 202, work rules for senior judges, id. at § 705, and — perhaps most important— prohibitions on outside income and honoraria, id. at § 601.
Of the 935 active and senior judges in 1987, four hundred reported earning outside income from teaching law, speaking fees, and other sources. 135 Cong. Rec. S29,693 (daily ed. Nov. 17, 1989). More than half reported extra earnings from $16,624 to $39,500. Id. The Report by The Bipartisan Task Force on Ethics, which became the basis for the Ethics Reform Act of 1989, noted that the repeated failure to provide recommended salary increases for judges and other executive employees meant increased reliance on “earning honoraria as a supplement to their official salaries.” 135 Cong. Rec. H30,744 (daily ed. Nov. 21, 1989) (Task Force Report). During consideration of the 1989 Act, Congress acknowledged that denying access to outside income would amount to a “pay cut.” 135 Cong. Rec. S29,662 (daily ed. Nov. 17, 1989) (statement of Sen. Dole that removing outside income is a “pay cut”); see also 135 Cong. Rec. H29,488 (daily ed. Nov. 16, 1989) (statement of Rep. Fazio), H29,492 (daily ed. Nov. 16, 1989) (statement of Rep. Ford). In that context, reliance on the 1989 Act’s compensation maintenance formula took on added significance. See 135 Cong. Rec. H29,503 (daily ed. Nov. 16, 1989) (statement of Rep. Wolpe) (“[The] pay adjustment provision [is] tied directly to the elimination of all honoraria or speaking fees.”). Indeed, the Task Force Report emphasized that the restrictions and limitations on outside earned income, honoraria, and employment made by the Act are conditional on the enactment of the increased pay provisions. 135 Cong. Rec. H30,745 (daily ed. Nov. 21, 1989) (Task Force Report).
The dependable COLA system became “a final important part” of the package designed to remove salaries “from their current vulnerability for political demagoguery.” 135 Cong. Rec. H29,483 (Nov. 16, 1989) (statement of Rep. Fazio); H30,753 (Nov. 21, 1989) (Task Force Report). In sum, the 1989 Act reduced judges’ income by banning outside income but promised in exchange automatic maintenance of compensation — a classic legislative quid pro quo. 135 Cong. Rec. H29,484 (Nov. 16, 1989) (statement of Rep. Martin stating that the Ethics Reform Act of 1989 is a comprehensive and interrelated package); cf. 135 Cong. Rec. H29,499 (Nov. 16, 1989) (statement of Rep. Crane objecting to the interrelated nature of the package and advocating separate bills for ethics and pay).
Thus, the 1989 statutory scheme was a precise legislative bargain which gave judges “an employment expectation” at a certain salary level. Cf. United States v. Hatter, 532 U.S. 557, 585, 121 S.Ct. 1782, 149 L.Ed.2d 820 (2001) (Scalia, J., concurring in part and dissenting in part) (arguing that the repeal of judges’ exception from Medicare tax constituted a diminishment in compensation because judges had an expectation of an exemption from this tax). Moreover, the 1989 Act COLA provisions were not an increase in judicial pay. If so, the connection with the vesting rule for pay increases articulated in Will might be a closer issue. Rather, the statute ensured that real judicial salary would *1183 not be reduced in the face of the elimination of outside income and the operation of inflation. See Williams, 535 U.S. at 916, 122 S.Ct. 1221 (Breyer, J., joined by Scalia and Kennedy, JJ., dissenting from denial of certiorari).
The vesting rules considered in Will are not expressly limited to the 1975 Act. However, the Supreme Court had no occasion to draw a distinction between a discretionary COLA scheme and a self-executing, non-discretionary adjustment for inflation coupled with a reduction in judicial compensation via elimination of outside income. For this reason, therefore, this court must examine further the actual differences in the two statutory schemes.
The Supreme Court described the adjustments under the 1975 Act as “automatic.” See Will, 449 U.S. at 203, 223-24, 101 S.Ct. 471. An examination of the 1975 Act, however, shows that the adjustments at issue in Will were automatically operative only “once the Executive had determined the amount.” Id. at 203, 101 S.Ct. 471 (emphasis added). The ways that the Executive determined the amounts under the 1975 Act and the 1989 Act are very different. The former was an uncertain, discretionary process. The latter is precise and definite.
While the Supreme Court described the COLAs in Will as “automatic,” the only aspect that was truly automatic was the link between judicial and General Schedule employee salaries. Whether General Schedule employees (and judges) would receive COLAs in any given year or whether those COLAs would maintain earning levels was anything but certain under the 1975 Act. Consequently, the only line the Supreme Court could draw in Will was between before and after the COLAs at issue were funded. The 1989 Act’s scheme presents a much different landscape than the Court confronted in Will. For these reasons, Will does not foreclose the relief that the judges seek.
Although this court determines that Williams incorrectly applied Will and other aspects of the law, this determination does not end the inquiry. The court must now examine whether Congress’ decisions to deny the promised COLAs actually violated the Compensation Clause in Article III of the Constitution.
The Compensation Clause has two basic purposes. First, it promotes judicial independence by protecting judges from diminishment in their salary by the other branches of Government. The founders of this nation understood the connections amongst protections for Life, Liberty, and the Pursuit of Happiness, protections for judicial independence, and protections for judicial compensation. Listed among the colonists’ grievances with the English Crown was that the King “ha[d] made Judges dependent on his Will alone for the Tenure of their Offices, and the amount and payment of their salaries.” Decl. of Independence para. 11 (U.S. 1776). As explained in The Federalist Papers, “[n]ext to permanency in office, nothing can contribute more to the independence of the judges than a fixed provision for their support.” The Federalist No. 79, p. 472 (Alexander Hamilton) (Clinton Rossiter ed., 1961).
During the Constitutional Convention in 1787, the inspired draftsmen set out to protect against abuses such as those enumerated in the Declaration of Independence. James Madison of Virginia proposed prohibiting both enhancement and reduction of salary lest judges defer unduly to Congress when that body considered pay increases. Will, 449 U.S. at 219-20, 101 S.Ct. 471. Madison urged that variations in the value of money could be “guarded agst. by taking for a standard wheat or some other thing of permanent *1184 value.” Id. at 220, 101 S.Ct. 471 (quoting 2 M. Farrand, The Records of the Federal Convention of 1787, p. 45 (1911)). The Convention rejected Madison’s proposal because any commodity chosen as a standard for judicial compensation could also lose value due to inflationary forces, i.e., the value of wheat could also fluctuate. Id. Thus, the Compensation Clause did not tie judicial salaries to any commodity. The framers instead acknowledged that “fluctuations in the value of money, and in the state of society, rendered a fixed rate of compensation [for judges] in the Constitution inadmissible.” The Federalist No. 79, supra. The Convention adopted the clause in its current form while voicing, at length, concerns to protect judicial compensation against economic fluctuation and reprisal.
The Compensation Clause, as well as promoting judicial independence, “ensures a prospective judge that, in abandoning private practice — more often than not more lucrative than the bench — the compensation of the new post will not diminish.” Will, 449 U.S. at 221, 101 S.Ct. 471. This expectancy interest attracts able lawyers to the bench and enhances the quality of justice. Id. This expectancy interest does not encompass increases in future salary but contemplates maintenance of that real salary level. Williams, 535 U.S. at 916, 122 S.Ct. 1221 (Breyer, J. joined by Scalia and Kennedy, JJ., dissenting from denial of certiorari); The Federalist No. 79, supra, (noting that an Article III judge is assured “of the ground upon which he stands” and that he should “never be deterred from his duty by the apprehension of being placed in a less eligible situation”).
The dual purpose of the Compensation Clause protects not only judicial compensation that has already taken effect but also reasonable expectations of maintenance of that compensation level. See Williams, 535 U.S. at 916, 122 S.Ct. 1221 (Breyer, J. joined by Scalia and Kennedy, JJ., dissenting from denial of certiorari). The 1989 Act promised, in precise and definite terms, salary maintenance in exchange for prohibitions on a judge’s ability to earn outside income. The 1989 Act set a clear formula for calculation and implementation of those maintaining adjustments. Thus, all sitting federal judges are entitled to expect that their real salary will not diminish due to inflation or the action or inaction of the other branches of Government. The judicial officer should enjoy the freedom to render decisions — sometimes unpopular decisions — without fear that his or her livelihood will be subject to political forces or reprisal from other branches of government.
Prospective judges should likewise enjoy the same expectation of independence and protection. A lawyer making a decision to leave private practice to accept a nomination to the federal bench should be entitled to rely on the promise in the Constitution and the 1989 Act that the real value of judicial pay will not be diminished. Will, 449 U.S. at 220-21, 101 S.Ct. 471; cf. United States v. Winstar Corp., 518 U.S. 839, 872, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (recognizing that government promises may give rise to reasonable expectations).
To be sure, the Compensation Clause does not require periodic increases in judicial salaries to offset inflation or any other economic forces. As noted before, the Constitutional Convention did not tie judicial salaries to a commodity or other standard of measurement. Will, 449 U.S. at 220, 101 S.Ct. 471. However, when Congress promised protection against diminishment in real pay in a definite manner and prohibited judges from earning outside income and honoraria to supplement *1185 their compensation, that Act triggered the expectation-related protections of the Compensation Clause for all sitting judges. A later Congress could not renege on that commitment without diminishing judicial compensation. That those compensation adjustments would happen in the future does not eliminate the reasonableness of the expectations created by the protections in the 1989 Act. Expectancy is, by its very nature, concerned with future events.
Congress committed to providing sitting and prospective judges with annual COLAs in exchange for limiting their ability to seek outside income and to offset the effects of inflation. This decision furthered the Founders’ intention of protecting judges against future changes in the economy. Instead of fixing compensation relative to a commodity subject to inflationary pressure, Congress pegged the adjustment to a known measure of change to the economy as a whole, thus protecting the real salary of judges from both inflation and from fickle political will. By enacting blocking legislation in 1995, 1996, 1997, and 1999, Congress broke this commitment and effected a diminution in judicial compensation.
Congress is not precluded from amending the 1989 Act. Congress may set up a scheme promising judges a certain pay scale or yearly cost of living increases. However, the Constitution limits those changes. If a future Congress wishes to undo those promises, it may, but only prospectively. Any restructuring of compensation maintenance promises cannot affect currently-sitting Article III judges.
IV.
Turning now to the second question, this court determines that the 2001 amendment to Section 140 of Pub. L. 97-92 has no effect on the compensation due to judges. Unlike the preceding discussion of the Compensation Clause, this is a question of statutory interpretation. Without a statutory basis for withholding the COLAs, federal judges should have received the adjustments in 2007 and 2010. These adjustments are payable to the judges regardless of constitutional protections. Congress simply had no statutory authority to deny them.
As noted above, Section 140 was part of an appropriations bill passed in 1981. It barred judges from receiving additional compensation except as Congress specifically authorized in legislation postdating Section 140. See Pub. L. No. 97-92, § 140, 95 Stat. 1183, 1200 (Dec. 15, 1981). The appropriations act containing Section 140 expired by its terms on September 30, 1982. See Williams, 240 F.3d at 1026. Thus, the rule that judicial pay adjustments had to be “specifically authorized by Act of Congress hereafter enacted” expired in 1982.
Of course, in 2001, Congress amended Section 140, purporting to apply it “to fiscal year 1981 and each fiscal year thereafter.” Pub. L. No. 107-77, Title VI, § 625, 115 Stat. 748, 803 (2001). Notably, Congress chose 1981 as the effective date for this extension of Section 140. As shown above, Congress did not explicitly authorize judicial compensation adjustments in 2007 and 2010. If Section 140 applied to bar those 2007 and 2010 adjustments, the absence of that additional Act of Congress would block — solely on the basis of this statute — any adjustments in those years.
Section 140, however, by its own terms, did not block the 2007 and 2010 adjustments. Section 140 is straightforward: it bars judicial salary increases unless (1) “specifically authorized by Act of Congress” and (2) “hereafter enacted.” Pub. L. No. 97-92, § 140. The 1989 Act’s pre *1186 cise and definite promise of COLAs clearly satisfies the first requirement to avoid a Section 140 bar. Williams, 240 F.3d at 1027. The 1989 Act “specifically authorized” the 2007 and 2010 adjustments which occurred under its precise terms.
Section 140 was enacted in 1981 and the 1989 Act occurred eight years later. Thus, the 1989 Act was “hereafter enacted” within Section 140’s meaning. When Congress amended Section 140 in 2001, it did not wipe the slate clean and set a new benchmark for the “hereafter enacted” requirement. The 2001 amendment makes no reference to its own November 28, 2001, enactment date. Instead, the amendment reiterates the 1981 baseline found elsewhere in the original Section 140, making the provision applicable to “ ‘fiscal year 1981 and each fiscal year thereafter.’ ” Pub. L. No. 107-77. An amendment referring only to fiscal year 1981 cannot redefine “hereafter” to refer to an entirely different date two decades later. Thus, the “hereafter enacted” requirement remained unchanged setting the “hereafter enacted” trigger date as 1981. In other words, Congress amended the existing Section 140 in 2001, but Section 140 remained a part of the Public Law 97-92 enacted in 1981.
Furthermore, the amendment did not change Section 140’s enactment date. Indeed the Government agreed at oral argument before this court en banc that the 2001 amendment did not change the “hereafter enacted” clause of Section 140. The 2001 amendment merely erased Section 140’s expiration date, making permanent whatever effect the provision had when originally enacted. Congress thus expunged this court’s holding in Williams that Section 140 expired in 1982. The 2001 amendment, however, did not change Section 140’s substantive scope.
The 1989 Act’s precise, automatic COLAs satisfy the requirements of Section 140 because it was enacted after Section 140. The Government withheld COLAs from judges in 2007 and 2010 solely because the government misinterpreted Section 140 as requiring a separate and additional authorizing enactment to put those adjustments into effect. By its own terms, Section 140 did not require that further authorizing legislation because it permitted COLAs under the “hereafter enacted” 1989 Act.
V.
In this case, Congress’ acts in 1995, 1996, 1997, and 1999 constitute unconstitutional diminishments of judicial compensation. Additionally, statutorily promised cost of living adjustments were withheld in 2007 and 2010 based on an erroneous statutory interpretation. Appellants’ motion to amend their complaint to include a challenge to the 2010 withholdings is granted. See Mills v. Maine, 118 F.3d 37, 53 (1st Cir.1997) (“[Ajppellate courts have authority to allow amendments to complaints because ‘[tjhere is in the nature of appellate jurisdiction, nothing which forbids the granting of amendments.’ ”) (quoting Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 834, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (alterations omitted)).
The statute of limitations does not bar these claims because, as established in Friedman v. United States, 159 Ct.Cl. 1, 7, 310 F.2d 381 (1962) and Hatter v. United States, 203 F.3d 795, 799-800 (Fed.Cir. 2000), aff'd in part, rev’d in part on other grounds, 532 U.S. 557, 121 S.Ct. 1782, 149 L.Ed.2d 820 (2001), the claims are “continuing claims.” As relief, appellants are entitled to monetary damages for the diminished amounts they would have been paid if Congress had not withheld the salary adjustments mandated by the Act. On *1187 remand, the Court of Federal Claims shall calculate these damages as the additional compensation to which appellants were entitled since January 13, 2003 — the maximum period for which they can seek relief under the applicable statute of limitations. In making this calculation, the Court of Federal Claims shall incorporate the base salary increases which should have occurred in prior years had all the adjustments mandated by the 1989 Act had actually been made. See Hatter, 203 F.3d 795 (applying the “continuing claim” doctrine to calculating wrongful withholding of judicial pay).
VI.
This court has an “obligation of zealous preservation of the fundamentals of the nation. The question is not how much strain the system can tolerate; our obligation is to deter potential inroads at their inception, for history shows the vulnerability of democratic institutions.” Beer v. United States, 592 F.3d 1326, 1329 (Fed. Cir.2010) (Newman, J., dissenting from the denial of petition for hearing en banc). The judiciary, weakest of the three branches of government, must protect its independence and not place its will within the reach of political whim. The precise and definite promise of COLAs in the 1989 Act triggered the expectation-related protections of the Compensation Clause. As such, Congress could not block these adjustments once promised. The Court of Federal Claims’ dismissal of Appellants’ complaint is hereby reversed, and the case is remanded for further consideration in accordance with this opinion.
OVERRULED-IN-PART, VACATED-IN-PART, AND REMANDED