

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| PEGGY STEVENS MCGRAW and<br>SAMUEL C. JONES, on behalf of<br>themselves and all others similarly<br>situated, | ) ) ) ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | No. SC95271 |
| | ) | |
| STATE OF MISSOURI,<br>MISSOURI STATE EMPLOYEES'<br>RETIREMENT SYSTEM, MISSOURI<br>COMMISSIONER OF ADMINISTRATION<br>DOUG NELSON, and MISSOURI STATE<br>TREASURER CLINT ZWEIFEL, | ) ) ) ) ) ) | |
| | ) | |
| Respondents. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
**The Honorable Frank Conley, Judge**

*Opinion issued May 24, 2016*

**PER CURIAM**

### Introduction

Peggy Stevens McGraw and Samuel C. Jones filed suit alleging the State erroneously implemented the 2010 compensation schedule adopted by the Missouri Citizens' Commission on Compensation for Elected Officials pursuant to Mo. Const. art. XIII, sec. 3. They claim that as a result of this error they were underpaid for their services, which also resulted in underpaid retirement benefits. Deciding the case after the

filing of separate motions to dismiss by the State and the retirement system (hereafter, "State"), the trial court dismissed with prejudice all counts raised by the appellants, correctly concluding that their claims were based on an interpretation of art. XIII, sec. 3 that was incorrect as a matter of law and that retirement benefits were properly calculated.[1]  The judgment is affirmed.

## History of Citizens Compensation Commission

In 1996, the people adopted an amendment to the state constitution to "ensure that the power to control the rate of compensation of elected officials . . . is retained and exercised by the tax paying citizens of the state . . . ."  *Mo. Const. art. XIII, sec. 3.1.*  The amendment placed the responsibility for establishing the compensation of elected state officials, members of the General Assembly, and judges, except municipal judges, in the hands of a specially created commission composed of citizens selected at random, representatives of various specified geographical, management, labor, and business entities selected by the governor, and one retired judge appointed by the supreme court. *Mo. Const. art. XIII, sec. 3.3.*

The commission was charged with issuing a report every two years establishing the compensation payable to the affected officials.[2]  *Mo. Const. art. XIII, sec. 3.8 (1994).*  The report was subject to rejection as a whole by the General Assembly if it adopted a concurrent resolution of disapproval by majority vote before February 1 following the

---

[1] Because the case was dismissed on motions to dismiss, the requests to certify class actions were not acted upon.

[2] "Compensation" includes the salary rate established by law, mileage allowances, and per diem expense allowances.  *Mo. Const. art. XIII, sec. 3.1.*

filing of the Commission's report. In addition, if the report was not rejected as a whole, the General Assembly could alter the commission's report through the appropriation process. *Id.*

In its 2002 report, the commission noted that all of the reports to that date had been rejected by the General Assembly. It recommended that "the voters should be given the opportunity to make changes to, or abolish, the Commission at the general election in August 2004." The changes urged by the commission were to make the commission's recommendations "binding upon the General Assembly and stand appropriated." *2002 Report of the Missouri Citizens' Commission on Compensation for Elected Officials, RSMo Supp. 2013, Appendix G, p. G-12.*

Although not acting by 2004, the General Assembly did place on the 2006 ballot changes to Mo. Const. art. XIII, sec. 3, which were approved by the people in November 2006. As amended, the ability of the General Assembly to reject the commission's report as a whole by February 1 now required a two-thirds majority vote. In addition, the power to alter the commission's report through the appropriations process was repealed. *Mo. Const. art. XIII, sec. 3.8.*[3]

### The Citizens Compensation Commission 2010 Report

In its 2010 report, as it pertains to this case, the commission provides that beginning with fiscal year 2013 "each state judge's salary shall be indexed to the commensurate judicial position in the federal system." *2010 Report of the Missouri*

---

[3] The changes adopted by the people in 2006 significantly distinguish the holdings in *Weinstock v. Holden*, 995 S.W.2d 411 (Mo. banc 1999).

3

*Citizens' Commission on Compensation for Elected Officials, RSMo Supp. 2013, Appendix G, p. G-40 (hereafter, "2010 Report").* In its conclusion, the commission sets out the effect of its recommendations with respect to fiscal year 2013 (beginning July 1, 2012). But it also notes the illustrated amounts "may change depending on the level of federal judicial compensation at the time these recommendations take effect." *Id. at G-41*. The 2010 Report was not disapproved by the General Assembly before the February 1, 2011, deadline and "appl[ies] and represent[s] the compensation for each affected person beginning on the first day of July following the filing of the schedule." *Mo. Const. art. XIII, sec. 3.8*.

### Federal Litigation Background

In *Beer v. United States*, 696 F.3d 1174, 1187 (Fed. Cir. 2012) (*Beer I*), the court held that federal judges should be awarded back pay in accordance with the compensation mandated by the 1989 federal ethics reform act. The 1989 act "provides that whenever a COLA for General Schedule federal employees takes effect under 5 U.S.C. § 5303, the salary of judges 'shall be adjusted' based on 'the most recent percentage change in the [Employment Cost Index] ... as determined under section 704(a)(1) of the Ethics Reform Act of 1989.'" *Id.* at 1177. Such COLAs had not been provided because of subsequent acts of Congress adopted after the 1989 act. *Id.* The court held, however, that Congress could not block these adjustments once promised and ordered adjustments in compensation. *Id.* at 1187.

Following remand of the case, the parties sought to determine the damages due to the affected federal judges—one part of which was the amount the parties would have

4

received as salary if it had been calculated correctly. *Beer v. United States*, 111 Fed. Cl. 592, 594 (2013) (*Beer II*). Nevertheless, no final decision was reached on these issues as to all federal judges until the parties reached an agreement in December 2013 that made the calculations effective. *Barker v. United States,* No. 12-826C at *2 (Fed. Cl. Dec. 10, 2013). Following *Barker*, the 2014 base salaries for federal judges were "reset" and federal judges began being paid base salaries that reflected *Beer II*'s calculations. In accordance with the 2010 Report, Missouri judges received commensurate salary increases beginning July 1, 2014.

## The McGraw and Jones Suit

Ms. McGraw served as a Missouri judge until her retirement in October 2013. Mr. Jones served as a Missouri judge until November 2014. For the relevant period of July 1, 2012, to June 30, 2014,[4] McGraw and Jones received compensation as calculated under the 2010 Report using as the federal judge component the salary without regard to the additional compensation eventually ordered as a result of the *Beer* and *Barker* litigation. McGraw and Jones claimed they were entitled to have their compensation for the relevant period recalculated using the results of the federal litigation. Because retirement benefits are calculated using the salary received on the date of retirement, McGraw also claimed she was entitled to increased retirement benefits.[5] As previously noted, the trial court

---

[4] Because Missouri judge salaries were not indexed to federal judge salaries for fiscal year 2012 and because Missouri judges received a commensurate pay raise for fiscal year 2015 after federal judge salaries were reset, McGraw's and Jones' claims concerned only fiscal years 2013 and 2014.

[5] Jones did not join in the retirement benefits claim because he retired after July 1, 2014, meaning his retirement benefits are based on a salary amount not in dispute.

dismissed with prejudice all counts raised by the appellants, correctly concluding that their claims were based on an interpretation of art. XIII, sec. 3 that was incorrect as a matter of law and that the retirement benefits were properly calculated.

**Standard of Review**

After the filing of motions to dismiss by the State, the trial court dismissed all counts of the petition. "This Court reviews the trial court's grant of a motion to dismiss *de novo*." *Foster v. State*, 352 S.W.3d 357, 359 (Mo. banc 2011). "In reviewing the propriety of the trial court's dismissal of the petition, this Court considers the grounds raised in the defendant's motion to dismiss and does not consider matters outside the pleadings." *Id.* "In determining whether a motion to dismiss should have been granted, the appellate court reviews the petition 'in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.'" *Id.* "If the motion to dismiss can be sustained on any ground alleged in the motion, the trial court's ruling will be affirmed." *Id.*

**Calculating Compensation under the Citizens' Compensation Commission 2010 Report**

As noted previously, the 2010 Report established judicial compensation as a stated percentage of the comparable federal judicial salary. The 2010 Report notes that the salary is "indexed to" the comparable federal position; it is not "equal to" the comparable federal position. "Index" is defined as "something that serves as a pointer or indicator;" "a ratio or other number derived from a series of observations and used as an indicator or measure." *Webster's Third New International Unabridged Dictionary*, 1148 (1996).

6

Each of the salaries noted by the commission is effective on July 1. And, in fact, the 2010 Report notes in its illustrations that the amounts "may change depending on the level of federal judicial compensation at the time these recommendations take effect" but, nevertheless, states the salaries would adjust on July 1. *2010 Report at G-41*. This is consistent with the language of the constitution, which provides that the normal schedule for changes reflected in commission reports is that the report is filed before December 1, the time for the legislature to disapprove the report is before February 1, and, if not disapproved, the schedule shall apply on the first day of July following the filing of the schedule. *Mo. Const. art. XIII, sec 3.8*. That any change under the 2010 Report should be effective July 1 allows for any change in the federal salaries to be known to the General Assembly in a timely manner so that the resulting cost of state judicial salaries can be taken into account by the General Assembly as it prepares the annual budget. *See Mo. Const. art. IV, sec. 24; art. III, sec. 25*.

The State has applied the 2010 Report consistently with the timing specified by that report. In this case, the federal judge salaries that the appellants seek to apply were not known until December 10, 2013, when the *Beer* and *Barker* litigation ended. The reset federal judge salaries for 2014 were used in calculating the state judicial salaries that became effective July 1, 2014. Therefore, McGraw and Jones have not stated a claim as to additional salary.

Judges are entitled to receive retirement benefits calculated on the "compensation which was in effect, [sic] at the time of the judge's termination of employment as a judge." *Section 476.530, RSMo 2000*. Because there is no additional salary due to

7

McGraw as a result of the *Beer* and *Barker* litigation, there is no dispute that the benefits she is receiving comply with that statute. Therefore, McGraw has not stated a claim as to additional retirement benefits.

## Conclusion

The judgment is affirmed.

All concur.